L. SCOTT, *as Mayor, &c.,* v. J. W. PAULEN.

1. INJUNCTION, *Restraining the Execution of Judgment; County-Seat Contest.* Where after a county-seat election, mandamus proceedings are had in the district court, and judgment rendered commanding certain officers who are holding their office at one place to remove them to another, which the court finds to be the legal county-seat, and such judgment is brought to this court on error, and by it affirmed, and while such proceedings are pending a new election is duly held in such county for the re-location of the county-seat, at which election the first above-mentioned place receives a majority of the votes, and is duly declared the county-seat: *Held,* that upon the application of the defendants in the judgment, showing the above facts, an injunction might properly issue restraining any execution of such judgment.

2. SESSIONS OF COUNTY BOARD; *Jurisdiction; Special Sessions; Presumption.* Where the record of the proceedings of the board of county commissioners shows that at a regular adjourned meeting, on the 22d of November, only one commissioner and the clerk were present, and ordered an adjournment to the 6th of December; that on the 6th of December a meeting was had, at which two of the commissioners with the clerk were present and transacted business as a county board, but fails to show whether it was a meeting pursuant to the supposed adjournment, or a special session called by the chairman, and contains no record of a call by the chairman, or a request therefor from two of the members; and where, among other matters, a petition duly signed by three-fifths of the electors is presented, praying for an election for a re-location of the county-seat, and an election ordered; and where, in obedience to such order, public notice having been duly given, two elections are had and generally participated in by the electors, and the final vote canvassed, and the result declared, and no objection thereto made for more than a year: *Held,* That there was no error in refusing to hold the election void because of the informalities in the record of the session of the county board at which the election was ordered.

3. COUNTY-SEAT ELECTION; *Publication of Notice; Time.* Where thirty days' notice of an election is required, a publication in a weekly newspaper is sufficient, provided that the first publication is at least thirty days prior to the election, and it is continued in each successive issue of the paper up to the time of the election.

*Error from Wilson District Court.*

IN May 1871 the county-seat of Wilson county was at Fredonia, having previously been duly located there. On the 23d of said May an election was held to relocate the county-seat of said county. Judicial proceedings growing out of this election, (11 Kas. 308 to 323,) resulted in the decision that by such election the county-seat was relocated and established at Neodesha. But such final decision was not made until June 1873, when the mandate of this court was sent to the district court to carry into effect said judgment in favor of Neodesha. While said litigation was pending and undetermined, and on the 28th of January 1873, another election was held in said county, to relocate said county-seat, which resulted in locating said county-seat at Fredonia, where it had in fact remained, pending the litigation mentioned. Upon the receipt of said mandate, defendants *Scott*, the mayor of Neodesha, and *Wm. Nicholson*, who as relator had commenced the proceedings to contest and determine the result of the election of May 23d 1871, were proceeding to have said mandate and the judgment therein mentioned carried into effect by the removal of the county offices and county records to Neodesha, whereupon *Paulen*, the clerk of the district court, commenced this action to restrain said defendants from further proceedings under said mandate and judgment. Upon notice to the defendants the application for a temporary injunction was heard by the district court at the May Term 1874, and such injunction was granted. From this order the defendants appeal, and bring the case here on error.

*P. C. Smith, L. W. Keplinger,* and *McComas & McKeighan,* for plaintiffs in error.

*Peffer & Clark,* and *Hudson & Chase,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action for an injunction. A temporary injunction was granted by the judge of the district court, to reverse which order this proceeding in error has been brought. Three questions are presented by counsel.

I. It is contended that this was an attempt to stay the execution of a mandate of this court, and that such a stay was beyond the power of the district court. The facts are these: An election had been held for the relocation of the county-seat. The canvass of the commissioners had given it to Fredonia. Application was made for a mandamus to compel certain of the county officers to remove their offices from Fredonia to Neodesha, alleging that Neodesha had received a majority of the legal votes, and was therefore entitled to the county-seat. The district court sustained the application and awarded the mandamus. On error to this court the judgment was affirmed. (*Russell v. The State, ex rel.*, 11 Kas. 308.) Paulen, (the defendant in error here,) was the successor in office of said Russell, and as such successor was made a party to that judgment. Pending the proceedings in that suit, another county-seat election was had, and as declared by the canvass of the commissioners, Fredonia received a majority of the votes, and became the county-seat. Paulen now brings this action to stay execution of the former judgment, on the ground that by the subsequent election all' rights which Neodesha had at the time of the commencement of that action have been swept away, and that Fredonia being the legal county-seat, it would be illegal to compel the county officers to remove their offices therefrom. We fail to see any such trespass by the district court on the prerogatives of this court, as counsel for plaintiffs in error conceive. There is no attempt to question the validity of the judgment previously rendered, or disregard the adjudication upon the rights in controversy. It is conceded, that at the time of the commencement of that action, Neodesha was the county-

seat, and entitled to the county offices; but it is claimed that by subsequent proceedings, within the power of the people to make, the county-seat had been located elsewhere, and therefore this last determination of the people should be upheld by the courts. We think this entirely proper, and no trespass on the power of the court, or disregard of its authority. It would be worse than useless to insist on an actual enforcement of the judgment by a removal of the offices to Neodesha, to be followed by an immediate removal back, in obedience to the declared result of the last election. It would be a judicial farce, equaled only by that suggested by the oft-quoted couplet—

> "The King of France, with twenty thousand men,
> Marched up the hill, and then marched down again."

II. The second question is one of more difficulty. The petition and order for the county-seat election were presented and made on the 7th of December, 1872. It is contended that there was no legal session of the board upon that day,

2. Sessions of county board; jurisdiction. and that therefore all orders attempted to be made were void, and no foundation for any subsequent proceedings or rights. The only evidence offered on the hearing of the application, upon this point, was the record of the county commissioners. This record showed a meeting on the 9th of November, at which two of the commissioners were present, and an adjournment to the 22d of November. On the 22d of November this entry appears:

"Board of county commissioners, November 22d, 1872.— Present, M. A. Brooks, commissioner; C. C. Chase, county attorney; James C. G. Smith, clerk. Met, but not being sufficient members of the board present, adjourned until December 6th 1872. M. A. BROOKS, Commissioner.

"Attest, J. C. G. SMITH, County Clerk."

The next entry that appears is of a meeting on December 6th, and commences as follows:

"*December 6th, 1872. State of Kansas, Wilson County. Board of County Commissioners.*

"Present, Henry Brown, Milton A. Brooks; W. A. Peffer, acting county-attorney, James C. G. Smith, county clerk. Commenced by electing Henry Brown chairman."

Then follows a record of the transaction of sundry business, and an adjournment to the next day. On the next day the petition and order for the election were presented and made. Now it is contended that as no quorum was present on the 22d of November, there was no power on the part of a single commissioner to order an adjournment, and that therefore the regular session, which commenced on the first Monday in October, and had been continued from time to time by adjournment, was then ended. The board could not thereafter meet before the first Monday in January, except in special session, which it is conceded might be had at any time, but only "on the call of the chairman, at the request of two members of the board." (Gen. Stat. p. 256, § 13.) The record does not purport to be the record of a special session, shows no request or call therefor. It is a session on a day to which there was an attempted adjournment. On the other hand, it does not recite a meeting pursuant to adjournment, and there is nothing in the record inconsistent with the fact of a special session. The law nowhere requires

Special session. Call, order and notice may be verbal.
any record to be made of the call, does not require even that it should be in writing. The call need not precede the session any definite amount

of time; nor is any public notice required. We see no reason to doubt the legality of a session called by the chairman on the request of two members, when the request is verbal, the call verbal, the notice to the members verbal, and the session held at the very hour of the call, provided that all the members receive notice of the session in time to attend, and a quorum is actually present. And a record which shows a session, purporting to be a special session, and at which all the members are present, will unquestionably show a valid session, even though it does not in terms state that the session was called by the chairman at the request of two of the members. Again, it must be noticed that in the location or relocation of county-seats, the important matter is the action of the people, and little if anything is committed to the discretion of the county board. "Upon the petition of three-fifths

of the legal electors * * * the board of county commissioners *shall* order an election," is the language of the statute. It is not a matter which they may or may not do, according to their judgment of its wisdom, but the duty is imperative upon the presentation of the petition, to order the election. And the result of the subsequent election or elections determines the county-seat, independent of the wishes or judgment of the commissioners. Hence it seems to us, that when a quorum of the county board, with the clerk, is present, assuming to act as a county board, and at a time and place at which a legal session is possible, and to such board in actual session a proper and legal petition is presented for a county-seat election, and an election ordered, and thereafter full and legal notice given of such election, two elections had, generally participated in by the electors, the result canvassed and declared, and no objection made thereto for more than a year, it will be too late to question the validity of the election on the ground that the record of the proceedings of the commissioners shows that the chairman was absent, and fails to show a session pursuant to a legal adjournment from a regular session, or that the session was a special session and duly called by the chairman on the request of two members. This is not a case in which parties are claiming adverse to the county, upon the basis of the action of the county board. Where a party insists that a county is bound by the action of its agents, it may well be held that he must show affirmatively, not merely that those agents acted, but that they acted in the manner in which alone they could legally bind the county. But the county here has no adverse interests; and the only duty of the commissioners is the formal one of submitting the question to the electors for decision. In a certain sense, all the parties interested, the electors of the county, have accepted the action of the commissioners, and treated it as valid; and while the doctrine of estoppel can have technically no application to a matter like this, yet courts should, if possible without too great a disregard of the established rules of procedure, uphold that which has received the gen-

eral assent of the parties interested and affected thereby. We conclude, though with some hesitation, that the election cannot be set aside upon this ground.

III. The remaining question has little difficulty. The statute requires thirty days' notice of the election. The notice was published in a weekly newspaper, the first publication more than thirty days prior to the election, and in each successive issue to the time of the election. This was sufficient. *McCurdy v. Baker*, 11 Kas. 111; *Whitaker v. Beach*, 12 Kas. 492.

This temporary injunction was granted upon notice, and after hearing both parties. Of course then the court was not bound to entertain a motion to vacate, based upon matters existing at the time the suit was commenced, and evidence of which could have been had if desired. Gen. Stat. 676, § 250. There being no other question the judgment will be affirmed.

All the Justices concurring.