## THE PAOLA & FALL RIVER RAILWAY CO. v. COMM'RS OF ANDERSON COUNTY.

1. COUNTIES — *Powers, Where Vested.* The powers of a county are vested in a board of commissioners as a corporate entity, and not in the commissioners separately and as individual officers.

2. ———— *Sessions of County Board.* The county board, before it can act, must be convened in legal session, either regular, adjourned, or special; and a casual meeting of a majority of the commissioners does not create a legal session.

3. ———— *Special Sessions.* A special session may be convened upon the call of the chairman at the request of two members; but personal notice of such call must be served, if practicable, upon every member of the board.

4. COUNTY BONDS; *Subscription to Stock of Railroad Corporation — When may be Canceled.* Where the record shows that in September 1871 a vote was had by which the county board was authorized to subscribe to the capital stock of a railway corporation, and that in September 1873 two members of the board met without any request or call for a special session, and without any notice to the third member who was present in the county and could have been served with notice, and not at a regular or adjourned session, and where notice of such session was intentionally and fraudulently withheld by said railroad corporation from said third member, and that at such session the two commissioners present passed a resolution directing a subscription to the capital stock of said company, and such subscrip-

tion was accordingly made, *held*, that such subscription was not a legal and binding contract upon the county, and that it could maintain an action to have it set aside and canceled, and all bonds delivered in pursuance thereof delivered up and canceled.

### *Error from Anderson District Court.*

THE *Board of County Commissioners* of the county of Anderson brought its action to cancel a subscription of $160,000 purporting to have been made by said county to the stock of the *Paola & Fall River Railway Company*, and for the return and cancellation of $160,000 of county bonds issued and deposited with the state treasurer to pay such subscription. The *Railway Company* demurred to the petition, and the district court, at the March Term 1875, overruled the demurrer. The essential facts stated in the petition, and upon which the questions here are decided, are copied in the opinion, *infra*. The *Railway Company* appeals, and brings the case here on error.

*W. A. Johnson*, for plaintiff in error:

1. The petition of the plaintiff below (defendant in error) shows that on the 14th of September 1871, at an election held in Anderson county a majority of all persons voting at said election voted in favor of a proposition then submitted by the county board relative to subscribing stock in and issuing the bonds of said county to the Paola & Fall River Railway Company. The plaintiff below admits that said election and all things anterior thereto were in conformity with the requirements of the statute to confer the authority on the county board to subscribe for stock in and issue the bonds of said county to said railway company. The petition further alleges that on the 4th of September 1873, the chairman of the county board and another member of the board met and held what they designated to be a special session of the board. The proceedings of said board, and their subscription to the capital stock of said railway company, and a copy of the proposition submitted to the electors, and the ballot used at the election on the 14th of September 1871, are set out in the

record in exhibits to the plaintiff's petition, and the plaintiff is estopped from denying them. The county board having acquired jurisdiction by the election, every presumption is in favor of the regularity of its proceedings, and they cannot be inquired into collaterally. 3 Iowa, 114; 15 Iowa, 216.

2. The powers of a county as a body politic and corporate must be exercised by a board of county commissioners. (Gen. Stat. 263, § 43.) The county board are required to meet in regular session at stated times, and in special session on the call of the chairman, at the request of two members of the board, as often as the interests of the county may demand. (Laws of 1873, p. 157.) The petition of the plaintiff below shows that the chairman of the board and one other member of the board were present, and held what they determined to be a special session of the board. Two members of the board met and passed on the object of the meeting and its purpose, and by their determination declared it to be a special session. When commissioners meet at the county clerk's office, and by their consideration determine that the interest of the county requires that they should hold a special session of the board, and so enter their determination on the records of said board, and proceed to the business of said county, there can scarcely be any question as to the legality of their proceedings; and if all the commissioners could so hold a special session, a majority of them could legally meet and transact the business of the county. Gen. Stat. 259, § 26; id., p. 999, §1, clause 3d. And so held by this court in *Scott v. Paulen*, 15 Kas. 162. And see *Blackman v. Town of Dunkirk*, 19 Wis. 198; *Com. v. Leckey*, 6 Serg. & Rawle, 166; *Cooper v. Ramesby*, 8 Watts; *Curtis v. Butler*, 24 How. (U. S.) 435.

In asking the court to cancel the subscription for stock and the cancellation of the bonds issued in payment thereof, the county board seeks the cancellation of its own official acts, an affirmation of its bad faith.

*Abram Bergen*, for defendant in error:

The only authority given by the county board for the subscription for stock and issuing of bonds to plaintiff in error,

was at a meeting of two of the commissioners, at what they termed a "special session" of said board. The allegations of the petition as to the manner of calling and holding this pretended session, admitted by the demurrer to be true, show that the two commissioners could not at such pretended meeting legally bind the county, as it might be affected by adverse claims, or in matters of contract. As to the meetings of corporate bodies, the rule is, if the meeting be special, that notice is necessary, and must be personally served, if practicable, upon every member entitled to be present, so that each one may be afforded an opportunity to participate and vote. Dillon on Munic. Corp., §§ 200, 201, 223, 224; Angell and Ames on Corp., §§ 488, 492; Wil. on Munic. Corp., § 58; 22 N.Y. 128, 134; 7 Cowen, 526; 21 Wend. 178; 2 Gill. (Md.) 254; 7 Conn. 214; 40 Cal. 77.

Plaintiff in error takes some pains to establish the proposition, that two of the commissioners can act. This is not controverted, as applied to the mode of proceeding after the meeting is duly convened. But it does not apply to the mode of convening the meeting. The majority may act only when the meeting is at a time designated by law, or if the meeting be special, when all the members are present, or all have been duly notified. (Dillon, §§ 202, 226.) In this state, the only statutory rule applicable to this case is found in Gen. Stat., p. 256, § 13, that the board may meet in special session on the call of the chairman, at the request of two members of the board. Under the rules of law, and in reason, the call should reach all the members. The member of the board absent from this special session, and not notified, resided with his family in the county, and was then in the county. In *Scott v. Paulen*, 15 Kas. 162, this court says, "The request may be verbal, the call verbal, the notice to the members verbal, provided all the members receive the notice in time to attend, and a quorum is actually present." In the case of *Blackman v. Town of Dunkirk*, 19 Wis. 198, cited by plaintiff in error, we do not discover anything tending to negative the necessity of notice to all the members.

Plaintiff in error seems to attach great weight to the records of the commissioners. We submit that this has no bearing upon the case as it now stands. · We do not admit that the county is estopped by every entry on the record of the commissioners, from contesting the binding force of such entry, if made by the order of but one or two members of the board, at the request and with the knowledge and connivance of those claiming adversely, especially if the record itself shows these facts. The petition contains allegations showing that the action was not the action of "the board," but only of two individuals who happened to be members, assuming to act as a board, but not·in such manner as to bind the county. By its demurrer, the railway company admits the truth of the allegations, and hence admits that the subscription and bonds are void.

The opinion of the court was delivered by

BREWER, J.: This was an action by the defendant in error to cancel a subscription for stock, and for the return and cancellation of the bonds of the county issued in payment of the stock. A demurrer to the petition was overruled by the district court, and this ruling is the matter here presented for review. We shall content ourselves with the examination of a single question, for upon that we think the ruling must be sustained. The subscription was ordered at a special session of the county board, and it is insisted that such session was not legally called, nor validly held. The facts respecting it are, as stated in the petition, and for the purposes of the demurrer admitted to be true, as follows:

"And said plaintiffs aver, that two members of said board did not request that such special session of said board should be held, nor that the same should be called by the chairman of said board; that no call for such special session was ever made by the chairman of said board; that all the members of said board were not present at such so-called special session; that B. M. Lingo, at that time an acting and legally-elected and qualified member of said board, was absent from said so-called special session, and no notice of such special

session, or of any call therefor, was given to or served upon the said B. M. Lingo, or at his residence, although, as said Railway Company and its agents then and there well knew, the said B. M. Lingo was then in said county, and resided therein with his family, and had no knowledge or notice of such intended special session, or of any call therefor; but that knowledge and notice of such intended special session was intentionally and fraudulently concealed and kept from the said B. M. Lingo by the said Railway Company and its agents; and said session was not a regular session of said board, nor was it an adjourned session from any regular session thereof, nor from any duly-called special session of said board."

Was such session a legal one, and the acts of the two commissioners thereat binding on the county? and if not, is it estopped from asserting its illegality in this action? The statute providing for sessions of the county board is found in § 13, p. 256 of the Gen. Stat. That section, after providing for the meeting of the board in regular session, adds, "and in special session on the call of the chairman, at the request of two members of the board, as often as the interests of the county may demand." This is the only statutory provision on the subject. It does not specify whether the call shall be verbal, or in writing, how long prior to the meeting it shall be made, nor require a record to be preserved of it. And the same is true as to the request. But still it requires a "call;" and a call of a meeting, in the legal sense of the term, is a summons to the parties entitled to meet, directing them to meet. It involves something more than a mere purpose in the mind of the caller, or an expression of that purpose unheard, unseen, and unknown. It implies a communication of that purpose to the parties to be affected by it. How it shall be communicated, is sometimes prescribed by statute, or by by-law. It is sometimes provided that it shall be by publication in the newspaper, sometimes by printed notice served personally or at the residence, and sometimes by mere oral personal notice. But in some way or other notice must be given; and if there be no regulation as to the manner of notice, it must be personal, at least where personal notice is

practicable. This is no new question. It has arisen in respect to the sessions of common councils of cities, boards of directors or trustees of private corporations, the town meetings of New England, the meetings of members of corporations, boards of electors, etc. And there is but one uniform rule running through the authorities. In the case of *Rex v. Mayor, &c., of Shrewsbury,* Rep. Temp. Hard. 151, it was said by the court, that "When the acts are to be done by a select number, notice must be given of the time of meeting, * * * and in such case the acts of a majority would bind the whole body; or if all were present through accident, without notice, their acts would be good; but the acts of a majority, present by accident, would not be binding." It was a saying of LORD KENYON'S, that "special notice must be given to every member who has a right to vote." Ch. J. TILGHMAN, in the case of the *Baltimore Turnpike,* 5 Binney, 481, said, "that when several persons are authorized to do an act of a public nature which requires deliberation, they all should be convened, because the advice and opinions of all may be useful, though all do not unite in opinion." In Wilcox on Munic. Corp., § 58, we find it laid down, that "all corporate affairs must be transacted at an assembly convened upon due notice at a proper time and place, consisting of a majority of the persons of each class to which the prescription or charter has confided the power." And SELDEN, J., in *People v. Bachelor,* 22 N. Y. 128, uses this language: "It is not only a plain dictate of reason, but a general rule of law, that no power or function intrusted to a body consisting of a number of persons can be legally exercised without notice to all the members composing such body." DILLON in his work on Munic. Corp., § 224, lays down the law thus: "If the meeting be a *special* one, the general rule is, unless modified by the charter or statute, that *notice* is necessary, and must be personally served if practicable upon *every member* entitled to be present, so that each one may be afforded an opportunity to participate and vote." See also further, *King v. Theodorick,* 8 East, 543; *King v. Gaborian,* 11 East, 77; *Ex parte Rogers,* 7 Cowen, 526, and

note; *Downing v. Rugar*, 21 Wend. 178; *Stow v. Wise*, 7 Conn. 214; *Harding v. Vandewater*, 40 Cal. 77; *Wiggin v. Freewill Baptist*, 8 Met. (Mass.) 301. Nor is this merely an arbitrary rule, but one founded upon the clearest dictates of reason. Wherever a matter calls for the exercise of deliberation and judgment, it is right that all parties and interests to be affected by the result should have the benefit of the counsel and judgment of all the persons to whom has been intrusted the decision. It may be that all will not concur in the conclusion; but the information and counsel of each may well affect and modify the final judgment of the body. Were the rule otherwise, it might often happen that the very one whose judgment should and would carry the most weight, either by reason of his greater knowledge and experience concerning the special matter, by his riper wisdom and better judgment, or by his greater familiarity with the wishes and necessities of those specially to be affected, or from any other reason, and who was both able and willing to attend, is through lack of notice an absentee. All the benefit, in short, which can flow from the mutual consultation, the experience and knowledge, the wisdom and judgment of each and all the members, is endangered by any other rule. Again, any other rule would be fraught with danger to the rights of even a majority, as, when legally convened the ordinary rule in the absence of special restriction being that a quorum can act and a majority of the quorum bind the body, it would, but for this rule, often be in the power of an unscrupulous minority to bind both the body and the corporation for which it acts to measures which neither approve of. Thus, were the body composed of twelve members, a quorum of seven could act, and a majority of that quorum, four, could bind the body. An unscrupulous minority of four by withholding notice to five, might thus bind both the body and the corporation. Reason therefore and authority unite in saying that notice to all the members to whom notice is practicable, is essential to a legal special session.

But we are referred by counsel to that clause in the act

concerning the construction of statutes, (Gen. Stat., p. 999,) which reads, "Words giving a joint authority to three or more public officers or other persons, shall be construed as giving authority to a majority of them, unless it be otherwise expressed in the act giving the authority." We do not see that this affects the question. Whenever there is a legal session, unquestionably a majority of the commissioners can act and bind the county. But this casts no light upon the question as to the manner of convening a legal session. It must be remembered that the powers of the county are not vested in three or more commissioners as such, but in a single board. (Gen. Stat., p. 254, § 3.) Two commissioners casually meeting have no power to act for the county. There must be a session of the "board." This single entity, the "board," alone can by its action bind the county. And it exists only when legally convened. Its regular sessions are fixed by law, and of them all the members must take notice. Its special sessions exist only upon call of the chairman, and that as we have seen implies notice. But again we are referred to the case of *Scott v. Paulen*, 15 Kas. 162, in which this court sustained the action of a county board at a session held to be a special session at which only two commissioners were present, and for which no request, no call, and no notice were shown. It will be noticed from the opinion in that case that the court reluctantly sustained the action, and considered itself as there going to the extreme limit. But two very important differences exist between that and this case. Here it *affirmatively appears* that no request, no call was made, no notice given, and that designedly the parties interested in and desiring the action of the board withheld notice from one member. There it was simply a presumption from the silence of the record. But chiefly, there the action of the board created no liability, was in nothing adverse to the interests of the county, and was accepted by the people as legal. All that was done was to order a county-seat election. The proper petition was presented. If in unquestioned session, the board would have had no discretion, but would have been bound to order an

election. By a majority, in apparent session, the election was ordered. The people accepted this action as valid, and generally participated in the election. Under such circumstances, when the only parties interested in and to be affected by the action, accepted it as valid, and when by it no interest or claim opposed to the county was created, it seemed just and legal to sustain the action. But in this case, by the action a great liability is attempted to be cast upon the county, adverse interests created, and the people of the county have not since that accepted the action as valid, and thus in a certain sense estopped themselves from questioning its validity. True, the people had prior thereto by a vote given authority to the board to subscribe, but this as heretofore decided simply gave the authority to the board to be exercised at its discretion. *L. G. Rld. & Trust Co. v. Comm'rs Davis County,* 6 Kas. 256. And this discretion was the discretion of all the members; that is, the information, experience, and judgment of all were to be exercised, and after consultation the judgment of the majority to control. Again, this action of the commissioners was taken in September 1873, and the vote was in September 1871. After remaining so long in abeyance it would seem that the authority should not be exercised without a full consultation of all the officers intrusted with the exercise of the authority. It may also be remarked, that this controversy arises between the county and the railroad company, the original parties to the transaction; that the latter is of course chargeable with notice of what actually took place therein, and was guilty as alleged of a fraudulent withholding of notice from one of the members. It cannot therefore, as against the county, invoke the aid of any principle of estoppel.

The ruling of the district court must be affirmed.

All the Justices concurring.