JOHN D. KIRKLAND, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed June 20, 1923.

Petition for Rehearing Denied September 12, 1923.

1. The foreman of a grand jury finding an indictment is not required, under the laws of this state, to sign such indictment.

2. The statute, sect. 6062 Revised General Statutes, requiring all presentments for penal offences to be signed by the foreman of the grand jury does not apply to an indictment found by such grand jury.

3. Where a person is indicted for crime and upon arraignment pleads not guilty and goes to trial upon the issue joined he

waives the objection that the indictment was not indorsed "a true bill" as the statute requires.

4. Where a motion is made to quash an indictment containing several counts and one of the counts of the indictment is good the motion should be denied.

5. Where an indictment is not so vague as to mislead the accused and embarrass him in the preparation of his defense nor so uncertain as to subject him to the danger of a new prosecution for the same offense the indictment should not be quashed upon the ground that it is vague and uncertain.

6. A county commissioner with whom the board of county commissioners intrust property belonging to the county may commit the offence of embezzlement denounced by section 5152 Revised General Statutes which provides that: Any State, county or municipal officer who shall: 1. Convert to his own use, or who shall 2. Secrete with the intent to convert to his own use, or who shall 3. Withhold with the intent to convert to his own use, (a) Any money, property, or effects belonging to or in the possession of the State, county, city or town whose duty requires him to receive said public money, property or effects; or (b) Any money, property or effects of another, the duty of which officer requires him to receive said money, property or effects, shall in every such act be deemed guilty of an embezzlement of the money, property or effects so converted, secreted or withheld, and shall be punished by imprisonment in the State prison, etc.

7. The formal introductory part or caption of an indictment need not be repeated in every count.

8. Under an indictment charging the accused as county commissioner with the embezzlement of $325.00 of the county's money on April 21 it was not error to admit in evidence a county warrant signed by the defendant as chairman of the board and dated October 12 where the evidence showed that the defendant as commissioner obtained a warrant for $325.00 on April 21 for a bill of lumber which he approved in favor of the seller of the lumber and later, in October, a warrant

for the entire amount of the bill was, at the defendant's suggestion, drawn in favor of the bank, the evidence tending to show that the first warrant which passed through the defendant's hands and bore his indorsement was not applied to the purpose for which it was drawn.

9. The board of county commissioners in legal meeting only and at no other time is vested with the power to make orders concerning the care of the county property. The members individually, when not in lawful meeting, have no power as county commissioners.

10. The minutes of the board of county commissioners are the best evidence of its official acts.

11. Evidence in rebuttal which explains or contradicts material evidence offered by the defendant is admissible.

12. Charges which are inapplicable to the evidence are correctly refused.

13. Evidence examined and found sufficient to sustain the verdict.

A Writ of Error to the Circuit Court for Jackson County; C. L. Wilson, Judge.

Judgment affirmed.

*Paul Carter, Ira A. Hutchison* and *Amos E. Lewis,* for Plaintiff in Error.

*Rivers Buford,* Attorney General, and *J. B. Gaines,* Assistant, for the State.

ELLIS, J.—John D. Kirkland was convicted of the crime of embezzlement upon three counts of an indictment containing five counts. Each count charged that he was a

County Commissioner for Jackson County and that he converted to his own use money which came into his hands and possession by virtue of his office as County Commissioner. The State Attorney entered a *nolle proseque* as to the first count. A motion to quash the indictment was overruled and Kirkland, pleading not guilty, was convicted upon the second, third and fifth counts. The second count charged the embezzlement of three hundred and twenty-five, the third, two hundred and forty and the fifth charged the embezzlement of seven hundred and thirty dollars.

The evidence as to the charge contained in the first count tended to show that Kirkland, as chairman of the Board of County Commissioners contrived through his representations to the Board to have two warrants issued to pay for a bill of lumber sold by Chas. Harris. The amount of the bill was $332.20. The first warrant was for $325.00, dated April 4, 1921, and payable to the order of Chas. Harris. The second was for the sum of $332.20 and payable to the order of the First National Bank of Graceville. The proceeds of the first warrant were obtained by Kirkland, and he returned that amount of money to the county after an investigation and a demand upon him for the same.

It appears that Harris obtained his pay through some arrangement with the bank to which the second warrant was made payable in settlement of the bill.

The evidence as to the charge contained in the third count tended to show that the defendant hired a team of mules and some road machinery belonging to the county to a man in Holmes County to do certain road work for him and received for the hire of the county property two hundred and forty dollars which he failed to deliver to the county.

The evidence as to the charge contained in the fifth count tended to show that certain mules, road machinery and oils and a quantity of corn, the property of the county valued at eight or nine hundred dollars, were converted by the defendant to his own use, some of which after investigation by the Board of County Commissioners after the defendant had ceased to be a member of the Board, he surrendered to his successor, Mr. Adams, who succeeded Mr. Kirkland in January, 1921. Some of the corn the defendant sold realizing about eighty-seven dollars for it. One of the county's mules be traded to a negro for another mule for a price to be paid by the negro; two mules the defendant kept in his possession until after investigation and demand upon him for them. The oil, two or three barrels he made no account of to his successor and said nothing about it until after an investigation and demand upon him, he found it in his barn covered with corn. Some road machinery, a trailer, he denied was the property of the county but afterward admitted that it belonged to the county and turned it over to his successor. The mules and oil and machinery were recovered by the county.

The evidence adduced by the State was ample, if believed by the jury, to convict the defendant upon the charge of embezzlement. From the evidence adduced the course which the defendant pursued in the exercise of his powers as a County Commissioner was one of apparent improbity most simple in character but disingenuous to a degree. As County Commissioner and chairman of the Board he was intrusted with certain property of the county utilized by it in road construction, building materials for bridges, road machinery, oils and mules used in road work and feed stuff for the mules. To a man of business probity this required at least an account of what

was received, what disbursed and what remained on hand and a faithful surrender of it to the Board when his term of office ended. But the evidence for the State in this case was sufficient to enable the jury to conclude that the defendant neglected system for inefficiency, faithfulness for disingenuousness, and knowingly profited by his sordidly artful and unworthy conduct at the expense of his employer the county. In other words that he appropriated property of the county to his own use and sought to veil his criminal conduct behind an assumed incapacity for detail.

An attack was made upon the indictment by a motion to quash which was overruled and the attack was renewed after verdict by a motion in arrest of judgment.

Under the motion to quash the indictment it was urged first, that the indictment was vague and uncertain and stated no offense against the laws of Florida; second, that it fails to allege that the offense was committed in Jackson County; third, that it fails to allege that the duty of the defendant as a County Commissioner required him to receive the money and property mentioned in the indictment; fourth, that the third count failed to allege that the defendant either received or embezzled the money therein mentioned in Jackson County; fifth, that the fifth count is double and attempts to charge the defendant with two distinct offences, namely: Converting the property of the county and withholding it with the intent to convert it; sixth, the fifth count does not allege from whom the defendant withheld the property and seventh, the said indictment was not signed by the foreman of the grand jury.

The record shows that the indictment in this case was "filed in open court in the presence of the grand jury." The record does not show that it was either indorsed "a

true bill'' and signed by the foreman of the grand jury or that the indictment was signed by the foreman.

Section 6062, Revised General Statutes, provides that ''All indictments shall be signed by the prosecuting attorney and endorsed on the back by the foreman of the grand jury, when so found, ''a true bill,'' and when not found, ''not a true bill,'' and signed by him. And in all presentments for penal offenses the presentment shall be signed by the foreman of the grand jury.'' The Constitution provides that ''No person shall be tried for a capital crime or other felony, unless on presentment or indictment by a grand jury, except as is otherwise provided in this constitution and except in cases of impeachment,'' etc. Section 10, Declaration of Rights.

The distinction between the words ''presentment'' and ''indictment'' is thus recognized both in the Constitution and the Statute.

A presentment is nothing more than instructions by the grand jury to the public prosecutor for framing a bill of indictment which being prepared by him is submitted to them and found a true bill. The presentment merged in the indictment ceases and becomes extinct and the indictment becomes the basis of the prosecution. It has been held that the prosecuting officer, representing the State, and whose concurrence and co-operation in the prosecution is required is not bound to submit a bill of indictment and if he declines to do so the presentment ceases to exist for any purposes, but it has also been held that a prosecution may be based on the presentment without any information or indictment and such is the rule in some states by statute. See 22 Cyc. 175; Commonwealth v. Christian, 7 Gratt. (Va.), 631; The State v. Hunter, 5 Humph. (Tenn.), 597; Smith v. The State, 1 Humph.

(Tenn.), 396; Commonwealth v. Towles, 5 Leigh. (Va.), 743.

In Georgia, under the code, all special presentments by the grand jury charging defendants with violations of the penal laws are required to be treated as indictments. See Code of Georgia, Section 931; Groves v. The State of Georgia, 73 Ga. 205; Foster v. The State of Georgia, 41 Ga. 582; Conner v. The State, 25 Ga. 515, 71 Am. Dec. 184.

Our statute, Section 6062 *supra*, was first enacted in 1828 and has been carried through the different compilations and revisions. While a presentment by a grand jury and an indictment may be in the same form when there is an indictment the presentment becomes merged in it and ceases to exist. Whether a presentment for a penal offense may alone be the basis of a prosecution in this State, which seems to be the effect of the constitutional provision above quoted, it is unnecessary to decide as there was an indictment and the presentment ceased to exist.

The objection therefore that the indictment was not signed by the foreman of the grand jury is without merit, as such formality was not required under the common law nor is it required under our statute.

No objection was taken to the indictment that it was not endorsed a true bill and such indorsement signed by the foreman of the grand jury and that point cannot be taken primarily in the Supreme Court. The plea of not guilty and trial constitute a waiver of the objection. Besides the transcript of the record in this case, judging from the certificate of the clerk, was made up under Special Rule 3, and it was required to show only the judgment and such papers and proceedings in the cause that were directed to be included by the written demands of the parties. As the indictment appears in the transcript and the indorsements thereon do not appear and as there

is nothing to show that such indorsements were required to be set out in the transcript *non constat* the Clerk may have been directed to omit them.   See Mercer v. State, 83 Fla. 555, 92 South. Rep. 535.

The law requires the foreman to endorse upon the indictment the words "a true bill" when found and sign such endorsement.   The record shows that the indictment was filed in the presence of the grand jury in open court; that the defendant pleaded to it and went to trial without any objection that it was not properly endorsed.   No presumption that the law was not observed in this respect can be invoked to nullify the proceedings.

The sixth ground of the motion is addressed to the fifth count of the indictment.   As the motion was to quash the indictment and other counts were good, free from the alleged objection, there was no error in overruling the motion.   See Sigsbee v. State, 43 Fla. 524, 30 South. Rep. 816; Wolf v. State, 72 Fla. 572, 73 South. Rep. 740.

But the account attacked was not so vague as to mislead the accused and embarrass him in the preparation of his defense, nor so uncertain as to subject him to the danger of a new prosecution for the same offense.   See Mills v. State, 58 Fla. 74, 51 South. Rep. 278; Wolf v. State, *supra.*

Under a motion to quash the indictment receives a liberal construction.   See Smith v. State, 75 Fla. 468, 78 South. Rep. 530; Sec. 6064 Revised General Statutes.

The fifth count alleges that the defendant in Jackson County aforesaid, on January 1st, 1921, then and there being a county officer of the State of Florida, to-wit: County Commissioner of Jackson County, did unlawfully convert to his own use and withheld to convert to his own use certain property described, "all said property belonging to Jackson County aforesaid and which came into

his hands and possession by virtue of his said office as County Commissioner.''

There was no merit in that ground of the motion.

The third ground of the motion presents the point that the indictment fails to allege the ''duty of the defendant as a County Commissioner required him to receive the money and property specified in the several counts of the indictment.'' Argument in support of this ground rests upon the construction which counsel place upon Section 5152 Revised General Statutes which provides that: ''Any State, county or municipal officer who shall: 1. Convert to his own use, or who shall; 2. Secrete with the intent to convert to his own use, or who shall; 3. Withhold with the intent to convert to his own use, (a) Any money, property or affects belonging to or in the possession of the State, county, city or town whose duty requires him to receive said public money, property or effects; or (b) Any money, property or effects of another, the duty of which officer requires him to receive said money, property or effects, shall in every such act be deemed guilty of an embezzlement of the money, property or effects so converted, secreted or withheld, and shall be punished by imprisonment in the State prison not exceeding twenty years, and by a fine equal to the value of the money, property or effect so converted, secreted or withheld.''

The remainder of the section prescribes a rule of evidence in such cases and makes the section apply to any deputy, clerk or employee in any State, county or municipal office and to all school officers.

There is another section of the statutes under which the charge of embezzlement may have been made and under which the defendant's conviction was amply supported by the evidence. That section provides as follows: ''Whoever secretes with intent to embezzle or fraudu-

lently conceals for his own use any property delivered to him which may be the subject of larceny, or any part thereof, shall be punished as if he had been convicted of larceny.'' See Section 5144, Revised General Statutes.

The judgment of the Court in this case, however, indicates that the Court deemed the indictment to have been presented under Section 5152 *supra*.

Counsel for the plaintiff in error urge with much ingenuity that the section quoted applies only to such officers whose statutory duties expressly require them to receive or collect or be the custodian of public monies. The court has no difficulty in maintaining that the word ''duty,'' as used in the statute, should not receive such a narrow construction, for that act contains a provision that it shall be applied to any deputy, clerk or employee; a class of persons whose duties are not expressly prescribed by statute.

Besides Section 1475, Revised General Statutes, empowers the Board of County Commissioners to make such orders concerning the care of and the improvement of the corporate property of the county as may be deemed expedient and to build and keep in repair county buildings, roads and bridges and to alter, lay out, maintain, establish, vacate or discontinue any road or highway in their respective counties. Section 1495, Revised General Statutes, makes provision for the compensation of members of the Board of County Commissioners for any service authorized and approved by the Board. Section 1588, Revised General Statutes, invests the County Commissioners with the general superintendence of the public roads within their respective counties and empowers them to keep the same in good repair. And by Section 1599, Revised General Statutes, the Board of County Commissioners is empowered to provide such machinery, teams,

tools and other implements as may be necessary for the work of building and the repair and maintenance of roads and bridges; and it provides that it shall be the ''duty of all persons to whom the County Commissioners shall deliver teams, tools, implements and supplies for road and bridge purposes, to make a strict accounting of the same.''

The authority of the Board of County Commissioners to acquire property necessary to the building, repair and maintenance of the public roads in their respective counties is undoubted. It is in fact expressly given by statute. The discretion is vested in them to adopt the means for its safe-keeping. Machinery and tools must be taken care of, mules must be housed and fed and properly cared for. Some person must be chosen to perform this service. Overseers and superintendents of roads are not made by statute the custodians of such property except for such time only as it is actually being used by them. It must eventually be returned by them to the county's custodian.

The method adopted by some Boards of County Commissioners of designating one of their members as custodian of such property to be used upon road work in his particular district is not unlawful if it may be deemed unwise. When a member of the Board of County Commissioners becomes, under the order of the Board and with his consent, the custodian of such property he becomes an employee, clerk or deputy of the Board for that purpose, even if it may not be said that the ''duty'' of his office ''requires him to receive it.''

But the Court is of the opinion that in such case, where property is acquired by the Board of County Commissioners in the discharge of its official duty and a member of the Board accepts the custody and care of such property or any part of it he receives it by virtue of his office

and the duty as such official rests upon him to faithfully account for it or the proceeds from any sale or rental of it. If any portion of the property while in his custody is sold or rented it is his duty to receive the proceeds thereof and account for it under the statute. Any other construction would defeat the evident purpose of the act to require of the people's executive officers a high degree of efficiency and honesty in the performance of their public duties.

In these days of extensive and expensive road work the duty cast upon County Commissioners and the responsibilities they assume under the statute requires a high degree of efficiency and official and business integrity in the care of the property acquired by them for the county and the execution of the work they are required to perform. The opportunities for petty speculation, even extensive dishonesty are measured only by the individual member's lack of capacity for efficient service and business and official honesty. If he is lacking in capacity for service and possesses no sense of material honesty the welfare of the county will not be secure unless such persons are made to stand in fear of the punishment which the statute seeks to impose upon such faithlessness in office.

In Hollingsworth v. State, 73 Fla. 44, 75 South. Rep. 612 this court speaking through Mr. Justice Taylor said that "When an indictment alleges that a party is an officer and by virtue of his office receives public moneys, it is equivalent to saying that the law of his office makes it his duty to receive such money, otherwise if he receives it without any authority of law so to do, he cannot be said to have received it by virtue of his office."

It follows from that reasoning that if an officer lawfully becomes the custodian of money or property belong-

ing to the county, state or municipality he may be said to have received it by virtue of his office, which is the equivalent of saying that the duty of his office required him to receive it; because where a public officer's possession of money or property belonging to the state or county is permissive, not in violation of law, his custody is official custody, the trust is an official one and his duties with reference to it are the same as if his reception of the property in the first instance was compulsory. The purpose of the act is to punish embezzlement by public officers, making such offense greater than in· ordinary cases of theft so far as punishment determines the gravity of the crime. And when property of the state or county comes lawfully into the custody of an officer, even though such custody is intended to be temporary only, the larceny or unlawful appropriation of it by the officer to his own use is as great a wrong to organized society as if the officer had been required by express statutory enactment to receive it.

The objection to the first count was without merit because it definitely charged that the defendant came into the possession of two hundred dollars belonging to the county by virtue of his office and that he unlawfully converted it to his own use.

The objection that the indictment in each count failed to allege that the offense was committed in Jackson County cannot be maintained. Each count clearly charged the commission of the offense to have been in Jackson County. Neither count was so vague and indefinite upon that point as to mislead the defendant and embarrass him in the preparation of his defense or expose him after acquittal or conviction to substantial danger of a new prosecution for the same offense. Section 6064, Revised General Statutes.

There was no error in overruling the motion to quash the indictment.

The motion in arrest of judgment was overruled and that is assigned as the second error.

It is argued that as only the first count averred that the indictment was found by a grand jury inquiring in and for the body of the County of Jackson the entry of a *nolle prosequi* upon that count left the other counts defective. That argument leads to the conclusion that the formal introductory part, or caption, of every indictment must be repeated in every count, and that if a defendant should be acquitted upon the first count he could not be convicted upon the others unless it was so repeated. The caption of an indictment usually contains the style of the court, the time and place when and where it was found and the jurors by whom it was found. The caption to an indictment applies to the indictment as a whole and to each count thereof. See 14 R. C. L. 164; 12 Stand. Proc. 172; Overton v. State, 60 Ala. 73; Greenwood v. Commonwealth, 11 Ky. Law Rep. 220, 11 S. W. Rep. 811. No dismissal of the first count destroys the caption, but it must be read as a part of the remaining counts. See Garnett v. Commonwealth, 117 Va. 902, 83 S. E. Rep. 1083; 12 Stand. Proc. 173.

The third, fourth, fifth and sixth assignments of error relate to the introduction in evidence of a certain county warant dated October 12, 1920. The defendant's counsel objected to the evidence and moved to strike the witnesses' reference to it. The ground of the objection was that the ''warrant and the amount sought to be proven to have passed thereunder are at variance with the allegations in the indictment and because the warrant and the amount sought to be proven thereunder are not as de-

scribed in the bill of particulars to the three counts of the indictment.''

There was no error in the court's ruling. The indictment charged the defendant with the embezzlement of three hundred and twenty-five dollars of the county's money on April 21, 1920. The evidence tended to show how the alleged crime was committed. As County Commissioner he approved a bill for lumber. A warrant for $325.00 was obtained by him on April 21, 1920, in favor of Chas. Harris, from whom the material was purchased. Later in October, 1920, a warrant was issued to cover the entire amount of the bill which was for $332.20 and made payable at defendant's suggestion to the first National Bank of Graceville, which held the account against the county. The evidence tended to show that the proceeds of the first warrant which passed through the hands of the defendant, as shown by his endorsement, was not applied to the purpose for which it was drawn, but that the bill was paid in full later by a warrant drawn in favor of the bank. There could hardly be a more conclusive showing of a fraudulent conversion of the first amount.

We note the reference in the brief to the error contained in the fifth assignment where the word ''first'' should read ''third,'' but as the same question is presented by the third assignment as was attempted by the fifth the error is immaterial and the fifth assignment may be disregarded.

Assignments of error numbered from seven to thirteen, inclusive, attack the court's ruling in sustaining the state's objection to certain testimony offered by the defendant relating to the trade made by him with Perm Lawrence in which a mule, owned by the county and in the defendant's possession, was disposed of by him.

The fifth count of the indictment charges the defendant with the conversion to his own use of three mules and

certain other property. The state had introduced the witness Perm Lawrence and shown by him that he had "swapped a mule with the county." The transaction was with the defendant for one of the county mules. When the negro proposed the trade the defendant said to him that he could not do it "until he seed the county." A month or so afterward he made the trade. The mule was still in the negro's possession two or three months after Mr. Adams, the defendant's successor as County Commissioner, went into office and about two or three months after the defendant's term had expired. He had not accounted to the county nor to his successor for the property traded nor the mules or property which he had received in exchange therefor.

A *prima facie* case was thus made by the State under the statute against the defendant. That is to say, the evidence, if believed by the jury, made a *prima facie* case of the defendant's conversion to his own use of the mule traded to the negro.

To overcome this *prima facie* case the defendant offered to prove by the witness L. B. Pooser, who was a County Commissioner for Jackson County in 1920, that the defendant "interviewed" other members of the Board of County Commissioners "with reference to a certain mule that was said to have been traded to a negro." It appeared that the interview did not occur in open session before the Board, no official action was taken, and the date of the alleged interview was not given.

The state's objection to the question which sought to elicit such information was sustained. That ruling is the basis of the seventh assignment of error.

There was no error in that ruling because the defendant's interview or consultation with other persons, even though they were County Commissioners, about the dis-

posal by him of county property in his possession could not relieve him of criminality. If they agreed to the disposal of the property by him individually and while not in a session of the Board it might have been evidence of their participation in the offense, but certainly no evidence of the defendant's authority. It is the Board of County Commissioners at any legal meeting that is vested with the power to make orders concerning the care of the county's property and not the members individually when not in lawful meeting. Section 1475, Revised General Statutes; 7 R. C. L. 941; 15 C. J. 460; Martin v. Townsend, 32 Fla. 318, 13 South. Rep. 887; P. & F. R. Ry. Co. v. Comm'rs of Anderson Co., 16 Kans. 302; San Diego County v. Seifert, 97 Cal. 594, 32 Pac. Rep. 644; Marsh v. People, 226 Ill. 464, 80 N. E. Rep. 1006; Torr v. State ex rel. Corcoran, 115 Ind. 188, 17 N. E. Rep. 286; Rice & Son v. Plymouth Co., 43. Iowa 136; Pike County v. Rowland, 94 Penn. 238; Hittner v. Outagamie County, 126 Wis. 430, 105 N. W. Rep. 950.

Assuming that the County Commissioners had power in a legal meeting to authorize a sale of the mule or a trading of it by the defendant, it was a power vested in all the members in legal session convened. The people, for whom the County Commissioners as a Board are vested with the power to manage and control the property of the county, have the right to the combined information, experience and judgment of all the members of the Board, or a majority of them, in legal session when a majority of them, and at no other time, can act with any binding effect upon the county. If the rule existed which the defendant's counsel seeks to set up, then in a case like this the criminality of a County Commissioner who converted property of the county in his possession to his own use would depend upon whether he had mentioned his purpose or his

accomplished act to two persons who were also members of the same body. The purpose of the statute, in a case like the one at bar, would be defeated by the consent or connivance of two of the defendant's fellow members of the Board acting individually and separately.

In other words if three members of the Board decided to convert the property of the county in their possession and acting individually and separately agreed each to the other's separate and individual conversion of the property in his possession, no offense would be committed. If in such case an order of the Board in legal session authorizing the disposal of the property would be necessary to relieve the parties of criminality under the statute the reason for a different rule when only one person is being tried for such offense is not apparent.

The eighth, ninth and twelfth assignments of error present the same question as presented by the seventh and we hold them to be not well taken.

Under the remaining assignments in this group, the tenth, eleventh and duplicate twelfth, the question of the effect of the ratification of the defendant's act by the Board in legal session, of which no record was made, is discussed. But the question is not presented by the record. What occurred was the following: The defendant, by his counsel, proffered to prove by the witness that the defendant in the presence of Mr. Pooser and Mr. Gay, both members of the Board of County Commissioners, "inspected the two mules" after which the three commissioners. "decided that it would be to the advantage of the county to make the exchange with the negro, Perm Lawrence, and acting upon the approval of the said Gay and Pooser, as County Commissioners, the exchange was made by the defendant with the said Perm Lawrence." Objection to

this proffered evidence was sustained, and as we have decided, correctly sustained.

The defendant, by his attorneys, then made the following proffer: "To prove the statement above made and in addition thereto, that afterwards at a meeting of the Board of County Commissioners the trade was discussed and approved."

The State Attorney objected upon the ground that the "minutes of the Board would be the best evidence of their official acts, if they acted officially." The objection was sustained. This ruling is made the basis of assignments of error under which the point is sought to be presented that the County Commissioners in legal session could have ratified the defendant's act and that no record or minute of the transaction was required to be made, that none was made, and the order of ratification could be shown by Parol. The questions were not raised as shown by the record.

The court's ruling that the minutes of the Board were the best evidence of its official acts was correct. See 11 Cyc. 397; 15 C. J. 468; Adams v. Board of Trustees of Internal Imp. Fund, 37 Fla. 266, 20 South. Rep. 266.

The thirteenth assignment of error rests upon the court's ruling permitting the State in rebuttal of the testimony of the defense to introduce in evidence a warrant drawn by the County Commissioners in favor of the defendant for the sum of five hundred and sixty dollars, dated Dec. 9, 1919, and numbered 3760. This warrant was issued in favor of the defendant to pay two bills for the feeding of ten mules, one bill dated "10-13-19" for $180.00 and the other dated "11-11-19" for the same amount. The warrant was for two hundred dollars in excess of that amount, and countersigned by defendant as chairman of the Board. This evidence was objected to by

the defendant upon the ground that the item was not included in the bill of particulars.

There was no error in this ruling. The defendant in his direct and cross examination, without objection, undertook to explain the transaction as an error of the clerk in making out the warrant. The evidence was in rebuttal of that testimony and tended to show that the error if any was as much the defendant's as the clerk's and tended to discredit his evidence. 10 Enc. of Ev. 637.

The fourteenth and sixteenth assignments of error rest upon the court's refusal to give special charges numbered one and four requested by the defendant.

The fifteenth assignment avers that the court refused to give special charge number three requested by the defendant. This assignment cannot be sustained because the record shows that the requested charge was given.

Requested instruction number one, which the court refused, was to the effect that if the amount of $325.00, alleged in the second count to have been embezzled, was paid in settlement of a lumber bill and applied in payment of said lumber bill the defendant should not be convicted upon that count.

The instruction, as requested, was inapplicable to the evidence even according to the defendant's explanation of the transaction and was therefore properly refused. According to the defendant's statement the warrant was payable to Harris, but it was the defendant's purpose to retain it and obtain the proceeds because he said Harris owed him. Later he countersigned a warrant in favor of the bank for the Harris bill in its entirety.

The fourth charge, requested and refused, contained the proposition that "possession of the property alone is not sufficient to convict the defendant under the indictment;" that a conversion to his own use with an inten-

tion to do so must be shown by the evidence beyond a reasonable doubt before he could be convicted.

The charge is in conflict with the rule of evidence prescribed by the statute which provides that "the failure, neglect, omission or refusal of any such officer to pay over or deliver to any official or person authorized or having the right by law to receive the same, for more than thirty days after the same has been collected or received by him, shall be *prima facie* evidence of the conversion to one's own use, or the secreting with intent to convert to one's own use, or the withholding with the intent to convert to one's own use, the said money, property or effects." As to the money he received upon the April warrant numbered 4032 it was his duty to immediately return it but it was not returned until two months afterward when restitution was demanded of him. As to the other property, mules, oil and machinery, he made no offer to restore it until several months after his term of office expired.

The remaining assignment of error attacks the sufficiency of the evidence to sustain the verdict.

There is no error in this assignment. From the view we take of the law of the case, as explained in the beginning of the opinion, the evidence was amply sufficient to sustain the verdict. The jury did not accept the defendant's explanation of the transactions involved and rejected his evidence when it conflicted with that of other witnesses. This was their sole province and as the evidence offered by the State was sufficient to warrant a conviction the verdict will not be disturbed upon the ground urged.

Finding no error in the record the judgment is hereby affirmed at defendant's cost.

TAYLOR, C. J., AND WHITFIELD, BROWNE, WEST AND TERRELL, J. J., concur.