W. N. O'NEAL v. WAKE COUNTY, COUNTY BOARD OF EDUCATION, AND STATE INSURANCE DEPARTMENT.

(Filed 17 October, 1928.)

1. Municipal Corporations—Governmental Powers and Functions in General—Counties.

> A county is a body politic and corporate to exercise as an agent for the State only such powers as are prescribed by statute and those which are necessarily implied therefrom by law, essential to the exercise of the powers specifically conferred. C. S., 1290, 1291, 1297.

2. Municipal Corporations—Contracts—Counties.

> It is essential that a county to exercise the powers to contract must act through its county commissioners as a body convened in legal session, regularly adjourned or special, and, as a rule, authorized meetings are prerequisite to corporate action, which should be based upon deliberate conference and intelligent discussion of proposed measures.

3. Same.

> The commissioners of a county are without authority, constitutional or statutory, to enter into a joint meeting with other State governmental agencies functioning as entirely separate departments respectively of the county and the State, and therein make a binding corporate contract by the adoption of a joint verbal agreement to pledge the faith and credit of the county for its part in the payment for the employment of a person to render service in the capacity of a detective to determine and procure evidence against those who have committed a criminal offense.

**4. Same.**

Where the period of employment under an alleged valid contract of the county is left indefinite, the presumption is that the time thereof is to be reasonable, and a period of six years, extending beyond the time for which the members have been elected to their office, is held to be unreasonable, and not within the contemplation of the county commissioners who are alleged to have made the contract in behalf of the county as its corporate obligation.

**5. State—Claims against the State—Consent to be Sued—Obligations of Contract.**

The withdrawal by statute of the right of the Insurance Commissioner to use certain funds, derived by license tax, for the investigation of fires does not impair a vested right prohibited by the Constitution, and thereafter a suit by a citizen under a contract made for that purpose is a suit against the State without authority or consent of the State, and cannot be maintained in the Superior Court. Const., Art. IV, sec. 9.

**6. Insurance — Control and Regulation — Insurance Commissioner — Statutes.**

Where a section of a revenue act allowing the Insurance Commissioner the use of a portion of the insurance license tax in the prevention of fires is omitted from a later act, and the collection of such tax is transferred to the Revenue Department, the effect is the withdrawal of this power from the Insurance Commissioner.

APPEAL by plaintiff from *Cranmer, J.,* at March Term, 1928, of WAKE.

Suit to recover damages for alleged breach of contract. The plaintiff alleges that in the early part of 1921 an outbreak of lawlessness occurred in New Light Township, resulting in the burning of a church and several residences and schoolhouses, and that on 9 May, 1921, the defendants held a joint meeting in the courthouse in Wake County in which "it was agreed to ask the plaintiff to obtain evidence against the parties guilty of said burnings," and that one-third of the plaintiff's "salary" should be paid by Wake County, one-third by the County Board of Education of Wake County, and one-third by the Insurance Department of the State of North Carolina. He alleges that the defendants agreed to make no record of their action, and that on 3 June, 1927, the contract was acknowledged in the following paper:

"STATE OF NORTH CAROLINA—WAKE COUNTY.

This is to certify that we, the undersigned, did, in May, 1921, duly appoint W. N. O'Neal to act as special detective in obtaining evidence against the party or parties connected with the burning of Sears' Schoolhouse, Story Hill Schoolhouse and West Grove Church, and Sunrise Library, and that we would pay said O'Neal a fair salary for his services. It was understood at the time of the appointment that no record

of the appointment should be made, as this might hinder the work as detective. It was also understood that the board of education would pay one-third of the salary allowed said O'Neal, the county commissioners one-third, and Mr. Stacey Wade, in behalf of the State, one-third.
This 3 June, 1927.

N. Y. GULLEY,
M. B. CHAMBLEE,
R. P. JONES,
O. L. RAY, M.D.,
E. T. SCARBOROUGH,
H. D. RAND,
STACEY W. WADE,
*Insurance Commissioner.*

Witness: W. J. SIMPSON, J.P., to all names
except the first and last ones."

It is further alleged that for six years the plaintiff gave his time to the performance of his agreement; that the guilty parties were convicted, and that he is entitled to recover for his services the sum of $9,000.

The county board of education filed an answer and the other defendants demurred to the complaint. The demurrers were sustained and the plaintiff excepted and appealed.

*Mills & Mills for plaintiff.*
*Leroy L. Massey for Wake County.*
*Attorney-General Brummitt and Assistant Attorney-General Nash for Insurance Department.*

ADAMS, J. The demurrers admit the complaint, but deny its sufficiency in law to constitute a cause of action. *Sandlin v. Wilmington,* 185 N. C., 257.

Wake County demurs on the ground that it is sued in its corporate capacity, and that there is no allegation in the complaint of a corporate contract; or, differently expressed, that the cause of action, if a sufficient cause is alleged, is against individuals and not against the county as a corporate entity.

In North Carolina every county is a body politic and corporate; it may exercise the powers which are prescribed by statute and those which are necessarily implied by law, and no others; and these powers can be exercised only by the board of commissioners or in pursuance of a resolution which it adopts. C. S., 1290, 1291, 1297; *Dare v. Currituck,* 95

N. C., 189; *Manuel v. Comrs.*, 98 N. C., 9. The implied powers are such as are necessarily or reasonably implied from those expressly granted or such as are essential to the exercise of those which are expressly conferred.

A county makes its contracts through the agency of its board of commissioners; but to make a contract which shall be binding upon the county the board must act as a body convened in legal session, regular, adjourned, or special. A contract made by members composing the board when acting in their individual and not in their corporate capacity while assembled in a lawful meeting is not the contract of the county. As a rule authorized meetings are prerequisite to corporate action based upon deliberate conference and intelligent discussion of proposed measures. 7 R. C. L., 941; 15 C. J., 460; 43 C. J., 497; *P. & F. R. Ry. Co. v. Comrs. of Anderson County*, 16 Kan., 302; *Kirkland v. State*, 86 Fla., 84. The principle applies to corporations generally, and by the express terms of our statute, as stated above, every county is a corporate body. C. S., 1290; *Duke v. Markham*, 105 N. C., 131; *Hill v. R. R.*, 143 N. C., 539; *Everett v. Staton*, 192 N. C., 216.

It is alleged in the complaint that the contract on which the plaintiff relies was made at a joint meeting of the defendants and, notwithstanding the direction given in C. S., 1309, that no record of the proceedings was kept. Counties exercise only such general supervision and control of county affairs as may be prescribed by law. Const., Art. VII, sec. 2. We find no constitutional or statutory provision which authorizes or empowers a board of county commissioners to enter into a joint meeting with other agencies functioning as entirely separate departments respectively of the county and the State, and thereby to make a binding corporate contract by the adoption of a joint verbal agreement to pledge the faith and credit of the county.

There is another point. The duration of the alleged agreement is indefinite. The proposed remuneration is referred to in the complaint as a salary; and although no time was suggested within which the services should be performed, or for how many years the "salary" should be paid, the plaintiff, after the lapse of six years, says that he is entitled to nine thousand dollars. Whether the board of commissioners had the legal right to make a contract of this kind potentially operating beyond their term of office and into the term of a succeeding board is a question involving serious doubt. The rule as to such contracts is not inflexible, but the prevailing opinion seems to be that the members of the board of county commissioners cannot contract in reference to matters which are personal to their successors. *Picket Pub. Co. v. County Commissioners*, 12 Anno. Cas., 986, note; 29 L. R. A. (N. S.), 656, note. When the time of performance is indefinite, the contract may mean that perform-

ance is to be continued for a reasonable time, or that the time was left indefinite with the expectation that the parties might continue performance as long as they pleased, or that they would subsequently settle that term of the promise. 1 Williston on Contracts, sec. 38. In the last two contingencies the matter would be personal to a succeeding board. But at any rate, it was manifestly not within the contemplation of the parties that the alleged contract should continue in effect for a long term of years. Our conclusion is that the agreement was not enforceable against the county of Wake, and for this reason that there was no error in sustaining its demurrer.

The demurrer of the Insurance Department presents other questions: Whether the action is against the State and, if so, whether the State has given its consent to be sued.

The Eleventh Amendment of the Federal Constitution provides that the judicial power of the United States shall not extend to any suit in law or equity commenced or prosecuted against one State by citizens of another State, or by citizens or subjects of any foreign State. In construing the Amendment the Supreme Court of the United States has said that it did not in terms prohibit suits by individuals against the States, but declared that the Constitution should not be construed to import any power to authorize the bringing of such suits, and that a suit against a State by one of its own citizens, the State not having consented to be sued, is unknown to and forbidden by the law, as much so as suits against a State by citizens of another State of the Union, or by citizens or subjects of foreign States. *Hans v. Louisiana,* 134 U. S., 1, 11, 33 Law Ed., 842, 846; *Fitts v. McGhee,* 172 U. S., 516, 624, 43 Law Ed., 535, 540.

In *Carpenter v. R. R.,* 184 N. C., 400, it was said: "The principle is firmly established that a State cannot be sued in its own courts or elsewhere unless it has expressly consented to such suit, except in cases authorized by Article XI of the Constitution of the United States, or by some provision in the State Constitution represented, for example, by Article IV, section 9, of the Constitution of North Carolina. In *Beers v. Arkansas,* 20 Howard, 527, *Taney, C. J.,* said: 'It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege and permit itself to be made a defendant in a suit by individuals, or by another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it.' " *Chemical Co. v. Board of Agriculture,* 111 N. C., 135; *Moody v. State Prison,* 128 N. C., 12.

As the plaintiff's claim against the Insurance Department (C. S., 6263) was in effect a claim against the State the Superior Court had no jurisdiction unless the State had given its consent to be sued; the Supreme Court has original jurisdiction to hear claims against the State and to render recommendatory decisions. Constitution, Art. IV, sec. 9. Had the State given its consent to be sued?

At the time the agreement is said to have been made the Insurance Commissioner was authorized to use the license tax imposed upon fire insurance companies for the purpose of investigating fires and paying certain expenses, including those of detectives and officers. C. S., 6078. The Revenue Act of 1921 provided that so much of the license fees collected from fire insurance companies as were necessary should be used by the Insurance Commissioner for the prevention of fire waste and accidents. Pub. Laws 1921, ch. 34, sec. 67. This section was omitted from the Revenue Act of 1927, and in consequence the Insurance Commissioner could not thereafter expend the license tax for any purpose. Public Laws 1927, ch. 80, sec. 208. Under C. S., 6268, no sum could be used for the purpose indicated without the previous approval of the Governor. Moreover in 1925 the General Assembly established an executive budget system and provided that every State department should operate under an appropriation and that no money should be disbursed from the State Treasury except as provided by the act. Public Laws 1925, ch. 89, secs. 5, 17. At the same session the duties of the Insurance Commissioner with respect to licenses, taxes, etc., were transferred to the Revenue Department (Public Laws 1925, ch. 158, sec. 5), and the appropriation made in 1927 for the fire prevention bureau of the Insurance Department was to be disbursed under the budget system. Public Laws 1927, ch. 79. The plaintiff's action was instituted on 28 December, 1927, and at that time the Insurance Commissioner had no authority to make payment even if the agreement had been valid, and no fund out of which payment could be made. The action, then, was a suit against the State; and if section 6078 should be construed as an implied consent to be sued, the consent was afterwards withdrawn before suit was brought; and withdrawal of consent was not objectionable on the ground that it impaired the obligation of a contract. This is clearly pointed out in *Beers v. Arkansas,* 20 Howard, 527, 15 Law Ed., 991, and in *Smith v. Reeves,* 178 U. S., 436, 44 Law Ed., 1140.

The subsequent certification by the Insurance Commissioner and by members of the board of commissioners and of the county board of education did not validate an agreement which could not originally have been enforced. In sustaining the demurrer of Insurance Department there was no error. The judgment of the Superior Court is

Affirmed.