350 So.2d 802 (1977)
SARASOTA COUNTY, Florida, Etc., Petitioner,
v.
DEPARTMENT OF ADMINISTRATION, etc., Respondent.
No. 77-159.
District Court of Appeal of Florida, Second District.
October 5, 1977.
Rehearing Denied November 3, 1977.
*803 Richard L. Smith of Nelson, Hesse, Cyril & Weber, Sarasota, for petitioner, Sarasota County.
David V. Kerns, Gen. Counsel, Dept. of Administration, and Louis F. Hubener, III, Division Atty., Division of State Planning, Tallahassee, for respondent.
Judith Smith Kavanaugh, Bradenton, Member, Manatee Chapter Isaak Walton League of America, as amicus curiae.
HOBSON, Judge.
In this petition for writ of certiorari the petitioner, Sarasota County, seeks judicial review of a declaratory statement issued by respondent, Department of Administration. In essence, petitioner sought, albeit unsuccessfully, to invoke the requirements of Chapter 380, otherwise known as the Florida Environmental Land and Water Management Act of 1972, so as to have a proposed crude oil splitter in neighboring Manatee County be considered a development of regional impact. Since we find petitioner lacks the requisite standing before this court, we decline to address this issue. The petition is denied.
On November 23, 1976, Sarasota County (County) filed a petition for declaratory statement with the Department of Administration (Department) pursuant to Section 120.565, Florida Statutes (Supp. 1976), concerning the applicability of Section 380.06(1), Florida Statutes (1975) and Section 380.11, Florida Statutes (1975), with regard to the construction of a crude oil splitter refining facility (the Project) in Manatee County by Manatee Energy Company, a subsidiary of Belcher Oil Company.
Thereafter the Department issued a declaratory statement dated December 27, 1976, stating that the definition of a development of regional impact (DRI) in Section 380.06(1), Florida Statutes (1975) is limited *804 by and applicable only to those projects described in Fla. Admin. Code Rule 22F-2, pursuant to Section 380.06(2), Florida Statutes (Supp. 1976).[1] No hearing was requested or held on the petition prior to the rendition of the declaratory statement.
Following the negative response to its query regarding the DRI statute's application to the Project, the County sought review of the Department's declaratory statement in this court pursuant to Section 120.68, Florida Statutes (Supp. 1976). Some time after the County's petition was filed in this court we granted the Manatee Chapter of the Isaac Walton League of America permission to appear in this cause as Amicus Curiae. The League's position is identical to that of the County.[2]
The threshold issue in this case, as it is in any cause before this and other judicial forums, is whether the County has standing to invoke the procedures of Chapter 380. The answer to this difficult question necessarily involves an analysis of the specific provisions of the Administrative Procedure Act involved sub judice, in conjunction with their relationship to the DRI process incorporated in the Environmental Land and Water Management Act, Chapter 380. The Department contends the County had no right to obtain an administrative declaratory statement pursuant to Section 120.565 since the County's petition only presented an abstract question for determination. More specifically the Department asserts the County had no substantial interest which would be affected by such a ruling. In response to this contention we would note that any answer to this question would be moot at this juncture because the declaratory statement was issued and the record shows that no hearing or preliminary determination of interest was made prior to its issuance.
Although the Department correctly points out that there is no indication in the statute or in any judicial decision spelling out the extent to which an agency may decline to honor such requests, we submit that a preliminary test of substantial interest is proper at the initial stage when the request is made. In support of this view, Fla. Admin. Code Rule 28-4.05,[3] promulgated by the Administration Commission, provides:

*805 A declaratory statement is a means for determining the rights of parties when a controversy, or when doubt concerning the applicability of any statutory provision, rule or order has arisen before any wrong has actually been committed. The potential impact upon petitioner's interests must be alleged in order for petitioner to show the existence of a controversy or doubt.
Thus an open-ended mechanism exists for examining the allegations of a petition for a declaratory statement, pursuant to Section 120.565, to ascertain the interest of a party. In fact an agency may hold a hearing to dispose of a petition submitted under this statute. Fla. Admin. Code Rule 28.4.07(1).[4]
Assuming, as we have, the County's right to the declaratory statement, the second facet of this procedural analysis concerns the interpretation of Section 120.68, Florida Statutes (Supp. 1976) and the DRI provisions of Chapter 380 as they both relate to standing for purposes of judicial review. The last sentence of section 120.565, dealing with declaratory statements, states, "Agency disposition of petitions shall be final agency action." In conjunction with this provision Section 120.68 provides in part, "A party who is adversely affected by final agency action is entitled to judicial review... ." Simply stated, the County maintains that the negative response to the petition for a declaratory statement is the "adverse effect" sufficient to clothe this court with jurisdiction in this cause. The Department, in response, asserts the County has failed to demonstrate a sufficient interest for purposes of review. In addition, the Department asserts there is no justiciable controversy.
While the County has taken the position that it was adversely affected by issuance of the declaratory statement, we are not persuaded that the petitioner falls within the ambit of those entities given the authority to initiate the DRI process under Chapter 380. At the outset we reject any contention that mere issuance of an unfavorable declaratory statement confers standing on a petitioner for purposes of the Administrative Procedure Act. This is particularly true in situations where the posture of the case presents the standing issue for the first time in the reviewing court.[5] Since it is axiomatic that jurisdiction may be questioned at any stage, we must turn to the applicable provisions of Chapter 380 to evaluate the County's position.
Section 380.06 sets forth a comprehensive administrative scheme designed to insure that those entities affected by local, regional or even state-wide development will have some input into the planning, implementation and future of said developments. At the heart of this planning statute is the developer. Thus, if the type of development proposed is already classified as one of regional impact, as defined in Section 380.06(1) and (2),[6] the developer must comply with the procedures delineated in Section 380.06(5)-(11). This process necessarily involves the interplay of (1) those local governments having zoning authority over the proposed development area; (2) regional planning agencies; and (3) the state *806 planning agency.[7] In fact, this statute contemplates the joinder of more than one local government where the proposed DRI falls within the jurisdiction of more than one local government. Section 380.06(7)(f).
The remaining question presented by this case is: What entities are involved in the DRI process if the proposed development is not one of those which is presumed to be a DRI under Fla. Admin. Code Rule 22F-2.01-12? Although the statute does not directly answer this question, some guidance is offered by subsections (3) and (4)(a) of Section 380.06. Subsection (3) provides:
Each regional planning agency may recommend to the state land planning agency from time to time types of development for designation as developments of regional impact under subsection (2). Each regional planning agency shall solicit from the local governments within its jurisdiction suggestions regarding developments to be recommended.
In a different manner subsection 4(a) explains the position of the developer who is uncertain about the status of his intended enterprise and whether it is a DRI or not. Subsection 4(a) states:
If any developer is in doubt whether his proposed development would be a development of regional impact, or whether his rights have vested pursuant to subsection (12), he may request a determination from the state land planning agency. Within sixty days of the receipt of such request, the state land planning agency shall issue a binding letter of interpretation with respect to the proposed development. Binding letters of interpretation issued by the state land planning agency shall bind all state, regional, and local agencies, as well as the developer.
Given the latter statutory directives, we are unable to see how, if at all, the County falls within any of the categories denominated as regional planning agency, appropriate local government or state planning agency. Moreover, the County certainly cannot be considered a developer. Consequently, the County's position that the DRI process applies to the Project is, in essence, an attempt to force the Department to make an ad hoc determination of the status of the Project where it has no authority to initiate such process. Furthermore, the record is devoid of any evidence showing that any of these proper entities have sought to invoke the DRI process.
At this stage we are unable to see how granting certiorari and deciding the case on the merits will be conclusive of all the rights involved in the proposed Project. This conclusion is particularly required where the Project is not presumed to be a DRI and, even more importantly, where the party seeking to initiate the DRI process is not one of those authorities designated in the statute to commence such proceedings. We note that this is not the first occasion in which Sarasota County has sought review *807 of developmental questions under Chapter 380. See Sarasota County v. Beker Phosphate Corp., 322 So.2d 655 (Fla. 1st DCA 1975); Sarasota County v. General Development Corp., 325 So.2d 45 (Fla. 2d DCA 1976).[8]Cf. Pinellas County v. Lake Padgett Pines, 333 So.2d 472 (Fla. 2d DCA 1976).
In summary, we are not blind to the laudable purposes of the County in seeking to provide a better quality of life for its citizenry. Yet we submit the County's position in this cause would be better served if the County petitioned those entities charged by statute with responsibility in the DRI process. For example, input offered to the appropriate local government, the regional planning agency and/or the developer might bear directly on the interests sought to be protected.
Accordingly, other points having been duly considered and found without merit, the petition for writ of certiorari is denied.
BOARDMAN, C.J., concurs specially.
SCHEB, J., dissents.
HOBSON, J., concurs with BOARDMAN, J.
BOARDMAN, Chief Judge, concurring specially.
Although I concur in the result reached by Judge Hobson I hasten to add that I do not construe the majority opinion as ultimately precluding relief to Sarasota County. The avenue the county has chosen to pursue is at best an abrogation of the scheme established by the legislature in Section 380.06, Florida Statutes, while there were and are two viable alternatives available to petitioner.
First, Sarasota County may proceed through its regional planning agency to effect the same result it sought to achieve by acting on its own behalf. See Section 380.06(3), Florida Statutes. Second, petitioner may initiate legal proceedings under the Florida Environmental Protection Act of 1971 to require Manatee County to comply with the DRI process. See Section 403.412, Florida Statutes.
SCHEB, Judge, dissenting.
Sarasota County here seeks a review of a declaratory statement issued by the respondent Department of Administration (DOA) holding the "guidelines and standards" administratively adopted pursuant to Section 380.06(2), Florida Statutes (1975), limit the application of the general definition of a development of regional impact (DRI) contained in Section 380.06(1). Translated into meaningful terms, DOA's holding means that it has concluded that the state land planning agency (a subdivision of DOA) has no authority to determine if the proposed crude oil splitter to be built in Manatee County is a development of regional impact, since this type of development is not listed as a presumed DRI under the administrative regulations.
The majority does not reach the merits of this controversy, holding instead that Sarasota County is not entitled to judicial review of the declaratory statement. This court, I note, has previously denied the respondent's motion to dismiss on jurisdictional grounds. I would hold the declaratory statement issued by the respondent constituted final agency action under Section 120.565, Florida Statutes (Supp. 1976). This court has the duty to review such actions under Section 120.68, Florida Statutes (Supp. 1976).
In my opinion the declaratory statement issued by the respondent is incorrect as a matter of law. Department of Administration said that Section 380.06(2), Florida Statutes (1975), requires the administration commission (governor and cabinet) to adopt specific guidelines and standards to be used by the state land planning agency to determine if a development should be determined *808 to be of regional impact; that these guidelines and standards have been codified in Florida Administrative Code 22F-2; and that under these guidelines the proposed oil splitter is not a development presumed to be of regional impact. The crux of the Department's declaratory statement seems to be that if a development is not presumed to be a DRI under 22F-2, the state land planning agency has no authority to find it to be one. In other words, the presumptions itemized in 22F-2 are all-inclusive with no discretion left in the state land planning agency to consider whether an unlisted project is or is not a DRI. With this I cannot agree.
Section 380.06(1), Florida Statutes (1975), defines a DRI to be, "[A]ny development which, because of its character, magnitude, or location, would have a substantial effect upon the health, safety, or welfare of citizens of more than one county." Section 380.06(2) then gives the administration commission the right to formulate the standards to guide the state land planning agency in deciding what is a DRI. I do not find any language in Chapter 380 to indicate that the administration commission should be the final arbiter of what is or is not a DRI. The state land planning agency is the receptacle of this delegated legislative authority as is shown by its role in receiving recommendations from regional planning agencies and in issuing letters of interpretation to developers. See Sections 380.06(3) and (4)(a).
Chapter 380, known as the Florida Environmental Land & Water Management Act of 1972, is landmark legislation implementing Article II, Section 7, Florida Constitution (1968), which places great stress on well planned development and the quality of life of all the residents of this state. Section 380.06(1) quoted above is a legislative directive designed to implement these intentions. I think DOA, by its failure to recognize that it is authorized to consider the merits of whether a proposed development is one of regional impact, has unduly restricted that legislative intent.
Accordingly, I would grant the county's petition for review and remand this cause to DOA with directions to reconsider and reformulate its declaratory statement consistent with the legislative intent of Section 380.06(1), rather than by limiting the statute's applicability to the presumed DRI's listed in Florida Administrative Code 22F-2.
NOTES
[1] § 380.06(1), Fla. Stat. (1975) defines a development of regional impact as:

... [A]ny development which, because of its character, magnitude, or location, would have a substantial effect upon the health, safety, or welfare of citizens of more than one county.
§ 380.06(2), Fla. Stat. (Supp. 1976), goes further to grant authority to the Administration Commission to adopt by rule guidelines and standards for use in determining whether particular developments shall be presumed to be of regional impact. These criteria are subject to legislative review and the state land planning agency is authorized to recommend specific guidelines and standards for adoption by the Commission.
Within this statutory framework the Department of Administration, Administration Commission has promulgated guidelines identifying twelve areas presumed to be of regional impact. Fla. Admin. Code Rules 22F-2.01-12.
[2] The Manatee Chapter of the Isaac Walton League of America filed a petition for declaratory statement on October 27, 1976 concerning the applicability of Section 380 to the same proposed Project. On December 28, 1976, one day after the County received its statement, the Department issued a declaratory statement which was essentially the same as that issued in response to the County's petition. In its Motion to Appear as Amicus, the League asserts it was aware of the County's intention to seek review of this question, but chose to forego an appearance as a party because of the potential expense involved.
[3] § 120.565, Fla. Stat. (Supp. 1976) was, prior to 1975, incorporated as part of § 120.56, Fla. Stat. (1975). In 1975 the legislature amended § 120.56 and deleted that portion of the statute pertaining to the issuance of declaratory statements. That deleted subsection became § 120.565. However, prior to the amendment creating the separate section dealing with declaratory statements, the Administration Commission enacted Fla. Admin. Code Rule 28-4.05, which is denominated "Purpose and Use of Declaratory Statement." That rule is, then, now applicable to § 120.565.

Petitioner County mistakes the intended purpose of Rule 28-4.05. This administrative rule does not confer procedural or substantive rights on a party seeking a declaratory statement. Instead, the rule explains the meaning and utilization of this administrative device.
[4] It is clear that petition for a declaratory statement under § 120.565 may take on a more formal nature if a hearing is held as authorized by Fla. Admin. Code Rule 28-4.07. The latter rule requires that if a hearing is held it shall be conducted according to the provisions of § 120.57(2), Fla. Stat. (Supp. 1976), or as otherwise agreed upon by the agency and the parties. Suffice it to say that any informal proceedings conducted pursuant to § 120.57(2) will be much more formal than the proceedings which occurred herein. Thus, the Department's contention that the County lacked standing to seek a declaratory statement is without merit since the Department essentially waived any preliminary check of the County's interest by issuing the statement. The Department in the future might well be advised to hold hearings to dispose of petitions for declaratory statements where it appears that the petitioner might lack the requisite standing. Of course, the rule authorizes other, less formal methods that the parties might utilize which would have the same effect of testing the interest factor at an early stage in the proceedings.
[5] Id.
[6] See note 1, supra.
[7] Where a developer chooses to proceed with a project, which the Administration Commission has designated as a DRI, and where such project falls within the zoning jurisdiction of a local government, the developer must make application to the local government stating his intention to undertake a development of regional impact. § 380.06(6), Fla. Stat. (Supp. 1976). Following said application the local government must give notice and hold a hearing. § 380.06(7). However, prior to such notice of public hearing being issued, the appropriate regional planning agency, if any, must submit a written notice that the application contains sufficient information for it to discharge its duties. Should the information be insufficient, the applicant is permitted to amend upon request by the agency. § 380.06(7)(a), (b).

Thereafter notice of public hearing is forwarded to the state planning agency, applicable regional planning agency and to other persons designated by the state planning agency to receive such notice. § 380.06(7)(d). Following receipt of such notice of public hearing by the regional planning agency, if one exists, the latter prepares a report and recommendation on the impact of such a project. § 380.06(8). Thereafter the local government issues a development order.
For more extensive treatment of the Florida Environmental Land and Water Management Act see Comment, Environmental Land Use Control: Common Law and Statutory Approaches, 28 U.Miami L.Rev. 135 (1973).
[8] Neither of these cases passed upon the precise procedural issue presented in this case. However, in both cases Sarasota County was found to be without standing to appeal developmental orders of local governments approving applications for developments of regional impact pursuant to § 380.07(2). See note 7, supra.