372 So.2d 159 (1979)
SOUTH FLORIDA REGIONAL PLANNING COUNCIL, Appellant,
v.
STATE of Florida LAND AND WATER ADJUDICATORY COMMISSION et al., Appellees.
No. 78-1600.
District Court of Appeal of Florida, Third District.
June 12, 1979.
*161 Milledge & Hermelee and Earl G. Gallop and Allan Milledge, Miami, for appellant.
Jim Smith, Atty. Gen. and Barry L. Silber, Asst. Atty. Gen., Tallahassee, Stuart L. Simon, County Atty. and Stanley B. Price, Asst. County Atty., Greenberg, Traurig, Askew, Hoffman, Lipoff, Quentel Wolff and Alan S. Gold, Miami, C. Lawrence Keesey, Tallahassee, for appellees.
Before HENDRY and KEHOE, JJ., and SCHULZ, GEORGE E., (Ret.), Associate Judge.
KEHOE, Judge.
Appellant, the South Florida Regional Planning Council[1] (SFRPC), pursuant to the provisions of Sections 120.68(2) and 380.07(5), Florida Statutes (1977), appeals a final order of the State of Florida Land and Water Adjudicatory Commission (Fla.WAC) which dismissed its petition to review an alleged development order issued by the Dade County Board of Commissioners (Dade Commissioners). Appellees are Dade County (Dade); Fisher Island, Inc., and Fisher Island Associates, Ltd., the property owners (Fisher); and Fla.WAC.
The recommended order of dismissal submitted to Fla.WAC by the hearing officer, which order was adopted by Fla.WAC as its final order, contains a summation of the facts of this cause; that order reads as follows:
"1. On April 10, 1978, the Department of Administration received Notice of Appeal and a Petition filed by the South Florida Regional Planning Council (SFRPC) wherein it seeks to appeal, pursuant to Section 380.07, Florida Statutes, a `Development Order' issued by the Dade County Board of County Commissioners (Dade County) on February 9, 1978, relative to proposed development of land on Fisher Island which is located South of Government Cut between Miami Beach and Virginia Key, Dade County, Florida. The SFRPC alleges in its Petition that a zoning resolution issued by the Board of County Commissioners on that date constitutes a development order as contemplated under Chapter 380.
"2. By letter of April 11, 1978, the Secretary of Administration, on behalf of the Florida Land and Water Adjudicatory Commission, referred the Notice of Appeal and Petition to the Division of Administrative Hearings for the appointment of a Hearing Officer, pursuant to Section 380.07, Florida Statutes, and Rule 22G-1.07, Florida Administrative Code.
"3. The owner of the land, Fisher's Island, Inc., a Florida Corporation, and its lessee, Fisher's Island Associates, Limited, a Florida limited partnership (Fisher), thereafter filed its Answer to the Petition denying, inter alia, that the zoning resolution is a development order and claiming that Chapter 380 is inapplicable, together with various affirmative defenses. It also filed a Motion to Dismiss the Petition wherein it asserted that the Florida Land and Water Adjudicatory Commission lacks jurisdiction over the subject matter and that the Petition does not state facts sufficient to serve as a *162 basis for appeal. The Motion is predicated on the fact that the Division of State Planning, Department of Administration, on November 24, 1975, issued a `Binding Letter of Interpretation' under Section 380.06(4), Florida Statutes, that the proposed project is not a development of regional impact. Dade County also filed an Answer to the Petition along similar lines, together with a `Suggestion of Lack of Jurisdiction' which was essentially based on the same grounds as Fisher's Motion to Dismiss.
"4. A prehearing conference was held to consider the various motions on May 15, 1978, at which time the Hearing Officer withheld ruling thereon pending receipt of pertinent documentary materials from the parties and submission of memorandums of law.
"5. The following is a summary of the sequence of events which preceded filing of the Petition herein:
"a. Fisher's Island, Inc. owns a parcel of land consisting of 179.23 acres on Fisher Island. In 1973, the parcel of land was leased with option to purchase to Fisher's Island Associates, Limited.
"b. On April 10, 1974, Fisher filed an application to Dade County for rezoning of the land to permit the development of approximately 5,000 condominium units and 1,500 hotel units.
"c. On April 11, 1975, Fisher filed an Application for Development Approval (ADA) for a development of regional impact with the SFRPC.
"d. Pursuant to Section 380.06(8), Florida Statutes, the SFRPC, in July 1975, issued and referred its report and recommendations on the development proposal to Dade County. In its report, it identified potentially adverse regional impacts resulting from the proposed development, but recommended denial of the application because of an alleged refusal of Fisher to provide sufficient information concerning development plans, methods and technology. In consideration of the adverse nature of the SFRPC report and of the fact that Dade County had adopted a new Comprehensive Development Water Plan, Fisher thereafter scaled down its original proposal to call for a maximum of 1,200 individual housing units and 200 hotel dwelling units, plus various ancillary facilities. This was in the form of a revised Letter of Intent to Dade County.
"e. On October 27, 1975, Fisher wrote to the Division of State Planning stating that it did not believe its revised proposal constituted a development of regional impact and requested a binding letter of interpretation by the Division to that effect. By letter of November 7, 1975 to the Division of State Planning, legal counsel for the SFRPC stated its position that Fisher's request for a binding letter of interpretation was inappropriate and should not be issued merely because the revised plan might bring the project below the numerical threshold guidelines for developments of regional impact based on county population as contained in Chapter 22F, Florida Administrative Code, and that the Division could not properly intervene in an ongoing DRI process by the issuance of a binding letter of interpretation. Additionally, by letter of November 12, 1975, SFRPC's counsel wrote to Dade County recommending denial of the ADA and enclosing a copy of its letter to the Division of State Planning.
"f. Nevertheless, the Acting Director of the Division of State Planning issued such a binding letter on November 24, 1975, which stated that the proposed development consisting of 1,200 dwelling units and 200 hotel units is not a residential development of regional impact as legally defined in Chapter 22F-2.20, Florida Administrative Code, and therefore would not be required to comply with the provisions of Section 380.06, Florida Statutes. The letter noted, however, that if any time in the future the development met such standards, it would then be subject to the DRI review and approval requirements.
"g. On November 26, 1975, Dade County deferred action on the application *163 to obtain an opinion of the Attorney General as to whether the SFRPC still had jurisdiction to review the revised application. On January 9, 1976, the Attorney General advised the Dade County Attorney that since Section 380.06(4)(a), Florida Statutes, as amended, provides that a binding letter of interpretation `shall bind all state, regional and local agencies as well as the developer,' and in the absence of judicial guidance to the contrary, both Dade County and the SFRPC must treat the proposal as not being a development of regional impact and that the approval procedures in Section 380.06 were not applicable.
"h. Subsequent dealings between Fisher and various Dade County agencies preceded Dade County action on the amended application on November 23, 1976. It was found that the basic question to be answered was whether Dade County's Comprehensive Development Master Plan which designated Fisher Island for park and recreational uses in the future, should be amended to permit urban development as requested by Fisher. In April 1976, Fisher filed an application to so amend the Master Plan appropriately to change the land use designation of Fisher Island to `medium density up to 11.0 dwellings per gross residential acre).' In addition, although Dade County was considering the possibility of State or local acquisition of the undeveloped portion of Fisher Island for park and recreation purposes, this plan was later abandoned. In October, 1976, Dade County did change its identification of Fisher Island on its Master Plan from `parks and recreation' to `low density (up to 1.5 units per acre),' and at the November 23rd meeting, denied Fisher's application as not being in conformance with such plan. At that time, the County Commission also voted to dismiss Fisher's DRI application from its agenda in view of the binding letter of interpretation and the opinion of the Attorney General.
"i. Fisher then filed a Petition for Writ of Certiorari to review the unfavorable zoning resolution in the Circuit Court of the Eleventh Judicial Circuit, Dade County, Case No. 76-40104. On November 1, 1977, the Court rendered an opinion granting the Petition, quashing the zoning resolution as being invalid and unconstitutional, and remanding the cause to the County Commission for further action. In its opinion, the Court stated that any zoning restriction on Fisher's property that is more restrictive than medium density would exceed the bounds of public necessity and be an invasion of constitutional rights. Although Dade County appealed to the Third District Court of Appeal, the appeal was later dismissed after the County Commission proceeded to hold public hearings in the matter and, by Resolution Z-33-78 of February 9, 1978, approved the application. The approval was subject to certain restrictive covenants executed by Fisher to insure it would abide by various undertakings contained therein, including one that the maximum number of dwelling units would be permanently fixed and established at a total of 1,200 apartment units and 200 hotel units.
"6. The pending Motion raises the question of whether a binding letter of interpretation issued by the Division of Land Planning to a developer under Section 380.06(4)(a), Florida Statutes, that a revised proposed project does not constitute a development of regional impact effectively terminates an ongoing DRI process and bars a regional planning agency from pursuing an appeal of favorable local government action under Section 380.07(2), to the Florida Land and Water Adjudicatory commission. SFRPC maintains that the question should be answered in the negative here in that (a) the Division of State Planning based its binding letter solely on a numerical count of the proposed dwelling units and failed to consider the character and location of the development, and (b) in that the Division failed to comply with Chapter 120, Florida Statutes, because it had not adopted rules of practice and procedure governing the issuance of such letters of *164 decision which would afford an interested party the right to be heard in such a process, nor did the letter itself conform with the requirements of Section 120.59, Florida Statutes, which requires that such orders include findings of fact and conclusions of law. Fisher's argument to the contrary, which has been adopted by Dade County, asserts that the SFRPC had no standing to participate in or challenge the decision-making process of the Division of Land Planning and that, even if it had, it is now foreclosed from challenging the binding letter because it took no action to pursue a timely challenge thereto under Chapter 120. It is further maintained by Fisher that the binding letter on its face shows that consideration was given by the Division of State Planning to matters other than the numbers of dwelling units proposed for the project.
"7. It is considered that the Florida Land and Water Adjudicatory Commission has no jurisdiction under Chapter 380 to consider the action taken by the Dade County Commission because the Division of State Planning has determined by its binding letter of interpretation to the developer that the revised proposed project is not a development of regional impact. Section 380.06(4)(a), Florida Statutes, provides that such letters of interpretation `shall bind all State, regional, and local agencies, as well as the developer.' A binding letter was issued in this case and it is deemed dispositive of the matter. It is unnecessary to determine whether the Division applied proper criteria in arriving at its determination or afforded the SFRPC appropriate procedural rights under the Administrative Procedure Act. Issuance of the binding letter of interpretation constituted a final agency order which cannot now be contested in this forum. Any deficiencies in its substantive formulation or in the procedural manner in which the decision was made could have been raised in an appropriate and timely judicial proceeding. (See General Development Corporation v. Division of State Planning, 353 So.2d 1199 at p. 1209 (Fla. 1st DCA 1977).
"8. In view of the above, it also is considered unnecessary to determine whether or not the Dade County resolution constituted a `development order.' Consequently, the Motions on that subject filed subsequent to the prehearing conference by the SFRPC, including a Motion to Stay these proceedings pending a judicial decision in a current case bearing on the legality of the Dade County zoning resolution, are denied. Additionally, SFRPC's Motion for Oral Argument on the instant Motion to Dismiss and Suggestion of Lack of Jurisdiction is denied because opportunity for such argument was provided at the prehearing conference.
"9. It is recommended that the Florida Land and Water Adjudicatory Commission grant the Motion to Dismiss and dismiss the Petition herein for the above-stated reasons."
From Fla.WAC's final order, adopting and incorporating the hearing officer's recommended order of dismissal, appellant brings this appeal.
Among the points raised by appellant on appeal, two of them require discussion and may be summarized as follows: (1) whether a binding letter of interpretation that a revised proposed project does not constitute a development of regional impact (DRI) issued pursuant to Section 380.06(4)(a), Florida Statutes (1977), by the Division of Land Planning (Division) to appellee Fisher binds SFRPC as to the determination by the Division and bars SFRPC from pursuing an appeal of favorable local government action under Section 380.07(2) to Fla.WAC; and (2) whether SFRPC is barred from collaterally attacking the validity of a binding letter of interpretation issued under Section 380.06(4)(a), Florida Statutes (1977), where it made an appearance in the proceedings, but failed to take judicial review therefrom.
The Florida Environmental Land and Water Management Act of 1972, Chapter 380, Florida Statutes (Act), represented a significant change in Florida's land use regulatory process. For an overview of Chapter *165 380, as amended, see Finnell, Saving Paradise; The Florida Environmental Land and Water Management Act of 1972, 1973 Urban Law Annual 103 (1973). In the past, Florida, like other states, delegated its inherent power to regulate land use to local governments. The decision to rely on localities to regulate land use was entirely plausible at a time when the impact of development was thought to be wholly local. Now, however, little debate remains concerning a regional and statewide interest in certain kinds of development. Chapter 380 establishes a procedure whereby regional and state interests may be considered and represented in certain land use decisions of greater than local concern. Although written for the specific needs of Florida, Chapter 380 was patterned after Article VII of Tentative Draft No. 3 of the American Law Institute's Model Land Development Code. This approach avoided the extremes of either total state preemption or reliance upon local governments by providing for the establishment of standards (and authorizing a state agency to establish standards) with which certain of the more important local decisions must comply, and authorizing appeal of those decisions to a state adjudicatory commission.
If a prospective developer is in doubt about whether his proposed development is a DRI or whether a proposed change to a project would divest rights grandfathered under Section 380.06(12), it may apply to the Division for a binding letter of interpretation. § 380.06(4)(a), Fla. Stat. (1977). This Section provides as follows:
"380.06 Developments of regional impact 
(4)(a) If any developer is in doubt whether his proposed development would be a development of regional impact, or whether his rights have vested pursuant to § 380.06(12), he may request a determination from the state land planning agency. Within sixty days of the receipt of such request, the state land planning agency shall issue a binding letter of interpretation with respect to the proposed development. Binding letters of interpretation issued by the state land planning agency shall bind all state, regional and local agencies, as well as the developer."
The obvious purpose of the clear and unambiguous language of this Section was to insure uniformity of regulation and predictability in regard to what constituted a DRI on a statewide basis. Pursuant to this Section, if the Division issues a "binding letter" that the proposed development does not constitute a DRI, it is presumed to be exempt from the regulatory procedures of Section 380.06. In our opinion, a reading of Chapter 380 also discloses that a regional planning agency has no right or standing relative to the issuance of a binding letter of interpretation. The Florida Legislature delegated the entire responsibility in regard to binding letters to the State planning agency. The regional planning agency has only statutory power and authority to make recommendations to local government consistent with Section 380.06 and to file appeals from development orders by local government pursuant to Section 380.07. Chapter 380 is directed toward those decisions involving important state or regional interests, while allowing local control over those matters of only local concern. The language of Section 380.06(4)(a) is clear and unambiguous; accordingly, it should be construed according to the plain meaning of the words employed by the State Legislature. South Florida Regional Planning Counsel v. Florida Division of State Planning, 370 So.2d 447 (1st DCA, 1979); and see, e.g., Rinker Materials Corp. v. City of North Miami, 286 So.2d 552 (Fla. 1973). Therefore, we believe that Fla.WAC properly dismissed the petition filed by SFRPC.
In considering appellant's next point on appeal, reference should be made to Paragraphs 7 and 8 of the recommended order of dismissal, set forth above, incorporated in the final order appealed issued by Fla. WAC. Further, the record reflects the following salient facts: A "binding letter of interpretation" was issued by the Division on November 24, 1975, which letter was not *166 appealed by SFRPC. The Dade Commissioners dismissed Fisher's application for a DRI from its November 23, 1976, zoning agenda. SFRPC failed to seek review of the dismissal pursuant to Section 33-316 of the Code of Metropolitan Dade County, i.e., a timely filing of a petition for writ of certiorari. In our opinion, appellant's failure to seek review of the administrative ruling is fatal to its cause. In Florida Welding & Erection Service, Inc. v. American Mutual Insurance Company of Boston, 285 So.2d 386 (Fla. 1973), the Florida Supreme Court stated the following applicable rule:
"Where a method of appeal from an administrative ruling has been provided, such method must be followed to the exclusion of any other system of review. Where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act." Id. at 389-90.
It was this basic tenet of law which resulted in this court's decision in General Electric Credit Corp. v. Dade County, 346 So.2d 1049 (Fla. 3d DCA 1977). Appellant has misconstrued the relevancy of the GECC case to this cause. Unlike GECC which altered its development plan and never sought a formal release of the requirements of Chapter 380, Fisher was officially removed from the provisions of Chapter 380 by receiving a "binding letter of interpretation" pursuant to Section 380.06(4)(a). The "binding letter" obviates further action by SFRPC and creates a presumption that zoning consistent with the provisions of the "binding letter" is not a "development order" as defined in Chapter 380. In the GECC case, SFRPC joined with Dade in dismissing a petition for writ of certiorari which sought to review a rejected development of regional impact. In the instant cause, SFRPC elected not to intercede in the circuit court proceedings in regard to the original rejection of Fisher's zoning application in November of 1976. Failure to intervene in a prior suit affecting the validity of a governmental action acts as a waiver and precludes further review of the act of the government. Also, SFRPC failed to seek review of Dade's dismissal of Fisher's development of regional impact application. Such review is the only proper method of review in this type of matter. See Baker v. State Road Department of Florida, 79 So.2d 511 (Fla. 1955); Kasser v. Dade County, 344 So.2d 928 (Fla. 3d DCA 1977); and Rose v. Dade County, 332 So.2d 136 (Fla. 3d DCA 1976).
Because SFRPC was not granted specific statutory authority under Chapter 380 to participate with the Division in regard to the issuance of binding letters of interpretation, the question arises as to whether SFRPC has that authority pursuant to Chapter 120, Florida Statutes (1977), when that Chapter is read in conjunction with Chapter 380. SFRPC contends that the subject binding letter of interpretation is in violation of the material provisions of Chapter 120. However, under Chapter 120 only a "party" who is adversely effected by a rule or order has statutory standing to challenge the rule or order. A "party" is specifically defined in Section 120.52(10) as follows:
"(a) Specifically named persons whose substantial interests are being determined in the proceeding.
"(b) Any other person who, as a matter of constitutional right, provision of agency regulation, is entitled to participate in whole or in part in the proceeding, or whose substantial interests will be affected by proposed agency action, and who makes an appearance as a party.
"(c) Any other person, including an agency staff member, allowed by the agency to intervene or participate in the proceedings as a party. An agency may by rule authorize limited forms of participation in agency proceedings for persons who are not eligible to become parties."
Whether SFRPC was a "party" within the meaning of Section 120.52(10) must be considered together with Chapter 380. Both the amendment in 1974 to Section 380.06(4)(a) and the revisions to Chapter 120, both being concurrently enacted statutes, should be construed in harmony with one another to determine the standing of *167 SFRPC on matters of binding letters. We believe that the legislators deemed the "substantial interest," if any, of SFRPC to be fully represented by the Division; therefore, it required binding letters to be binding on SFRPC without providing any right in the regional agency to be a party to or participate in the process. In our opinion, SFRPC lacks a substantial interest which is not otherwise represented by the Division; therefore, it is not a "party" under Chapter 120. Even if SFRPC could claim to be a "party," it made an appearance before the Division by its letter of November 7, 1975. It follows that, if SFRPC was a party to what it contends to be final agency action, it was also a party for the purpose of seeking judicial review from that action pursuant to Section 120.68; however, no such review was sought. Accordingly, the agency action became final and is res judicata as to all of the parties and may not be challenged collaterally by SFRPC. Further, even if SFRPC made no appearance by its letter of November 7, 1975, but, pursuant to Section 120.52(10) had the right to do so, having had actual notice of the proceedings it waived the right and is estopped from challenging the binding letter. See Burger King Corporation v. Metropolitan Dade County, 349 So.2d 210 (Fla. 3d DCA 1977).
We have carefully reviewed each of the other points raised by appellant on appeal and find them to be without merit. Accordingly, for the reasons set forth above, it is our opinion that the final order of Fla.WAC appealed should be affirmed.
Affirmed.
NOTES
[1] An agency designated by the State land planning agency to exercise responsibilities under Chapter 380, Florida Statutes (1977) in the south Florida area. See § 380.03(13), Fla. Stat. (1977).