LARRY G. SMITH, Judge.
Compass Lake Hills Development Corporation appeals the Department of Community Affairs’ binding letter under Section 380.06, Florida Statutes, determining that Units Five and Six of Compass Lake Hills Subdivision, located in Jackson County, Florida, are developments of regional impact subject to the requirements of Section 380.06. We affirm in part and reverse in part.
This is a case of first impression, in which we are called upon to initially construe Section 380.06(12), Florida Statutes, which provides “vested rights”, or exemption from the requirements of Section 380.06, Florida Statutes, providing the developer can show authorization to commence the development upon which there has been a reliance, and a change of position, prior to July 1, 1973. The applicable subparagraph of the statute provides:
“Nothing in this section shall limit or modify the rights of any person to complete any development that has been authorized by registration of a subdivision pursuant to Chapter 478, by recordation pursuant to local subdivision plat law, or by a building permit or other authorization to commence development on which there has been reliance and a change of position, and which registration or recor-dation was accomplished, or which permit or authorization was issued, prior to the effective date of the rules issued by the administration commission pursuant to subsection (2). If a developer has, by his actions in reliance on prior regulations, obtained vested or other legal rights that in law would have prevented a local government from changing those regulations in a way adverse to his interests, nothing in this chapter authorizes any governmental agency to abridge those rights.”
The critical date for purposes of determining whether rights have been vested under the statute was established by promulgation of Chapter 22F-2, Florida Administrative Code, effective July 1, 1973.
The State Land Planning Agency, Department of Community Affairs [1] is given statutory authority, upon application by a developer, to issue a binding letter of interpretation determining whether a pro *378 posed development would be a development of regional impact, and whether the developer’s rights have vested pursuant to subsection (12). Chapter 380.06(4)(a), Florida Statutes. In binding letter proceedings and vested rights determinations under the statute, only the Department and the developer are involved. South Florida Regional Planning Council v. Florida Division of State Planning, 370 So.2d 447 (Fla. 1st DCA 1979); South Florida Regional Planning Council v. State of Florida Land and Water Adjudicatory Commission, 372 So.2d 159 (Fla. 3rd DCA 1979).
The question for review before this court is whether the evidence presented to the Department by appellant was sufficient to show “authorization to commence development” (Section 380.06(12)), upon which a claim of vested rights may be based. Appellant did not contest nor does it here complain of the Department’s ruling that the development constituted a development of regional impact. (Section 380.06).
The Department’s order granted vested rights status as to Units One through Four, but denied vested status as to Units Five and Six, and provided that the developer would be required to comply with Section 380.06, Florida Statutes, as to those units. The order further directed appellant to comply with the review requirements of Section 380.06 prior to further development of those units, and to terminate sales in Units Five and Six until completion of the review and issuance of a development order in compliance with the statute.
Appellant claims vested rights status for Units Five and Six based upon a series of events occurring both before and after July 1, 1973. Appellant relies upon evidence tending to show that its predecessor in title apparently received “conceptual approval” for the development by the County Commissioners of Jackson County in 1971, and received further assurances in early 1972 when the subdivision plat for Unit One was presented and approved by the County Commission. The evidence also indicates that the developer acceded to the County’s demand for a minimum lot size of one acre; that the developer agreed to pave 3.5 miles of an existing county road running through or bordering the property; and that the county, on August 24, 1973, agreed to accept all roads in the subdivision constructed to Jackson County specifications, and agreed to accept road maintenance on January 1, 1983, or sooner, pending inspection and approval of all roads. Appellant acquired the entire property, consisting of over 10,000 acres, from the original developer, in May, 1972, with intentions of completing the development.
Subdivision plats for Units One, Two, Three and Four (embracing some 4,650 acres) were presented to and approved by the Jackson County Commission, prior to July 1, 1973.. Also, Units One through Four were registered with the Florida Division of Land Sales and Condominiums (under Chapter 478, Florida Statutes) prior to July 1, 1973. Appellant made expenditures for planning, platting and surveying of approximately $135,500.00 prior to July 1, 1973, and approximately $660,000.00 after that date. A subdivision plat of Unit Five was approved on July 24, 1973, and the plat for Unit Six was approved on February 26, 1974. Units Five and Six were registered with the Division of Land Sales on August 29, 1973, and October 7, 1974, respectively.
Appellant presented information showing expenditure of $1,125,000 for a down-payment to acquire the land, plus other expenditures before July 1, 1973, and claims expenditures in excess of $3,500,000 between July 1, 1973, and May, 1978, when appellant submitted its application for vested rights determination under Section 380.-06(12).
At the center of the controversy is the Department’s interpretation of Section 380.-06(12) and the sufficiency of the evidence relied upon by appellant to show “authorization” of the development by the County Commission of Jackson County. Appellant submitted several affidavits from former County Commissioners of Jackson County, a real estate broker, and the former President of appellant’s predecessor in title. The Department found that none of the affidavits *379 state that a master plan received formal approval by resolution or vote of the County Commission in connection with the platting of Unit One in 1971, or thereafter. The Commissioners’ affidavits indicated only awareness that Unit One was part of a larger development totalling some 10,500 acres, to which they gave “conceptual approval”. The Department found there was no record showing that a master plan of development was formally presented or approved, or that any formal vote of approval was made by the County Commissioners.
We have examined the record and find no error in the Department’s conclusions. Further, it is clear from the record that appellant failed, after specific requests by the Department, to produce any evidence of official County Commission action by way of minutes or resolution, or any “master plan” disclosing the manner in which Units Five and Six were to be developed. No plan was produced by appellant, which was in existence prior to July 1, 1973, to which the purported “conceptual approval” of the County Commissioners could be related.
The proceedings before the Department fully complied with Section 120.-57(2), Administrative Procedure Act, and appellant was not entitled to a formal hearing under Section 120.57(1). General Development Corp. v. Division of State Planning, 353 So.2d 1199 (Fla. 1st DCA 1978). Appellant requested a formal hearing, but this request was withdrawn. We find no error in the Department’s denial of a second formal hearing request which was submitted after the issuance of the Department’s binding letter determining that Chapter 380 applied. Although this court has the prerogative to order a formal hearing, General Development Corp. v. Division of State Planning, supra, we find no justification for doing so, and no error on the part of the Department in refusing it, in view of the fact that appellant had ample opportunity to furnish the requested information, and has given no indication by means of its petition to the Department, or otherwise, that a master plan predating July 1, 1973, or any evidence of formal action by the County Commissioners prior to the same date, can be produced.
In determining whether rights have vested under Section 380.06(12), the existence of a development plan is of critical importance. The plan shows what the developer intends to do with the land, and once the development is approved, what he is permitted to do. Section 380.06(7Xe). It also serves as a basis for a ruling on any proposed modifications or changes. Section 380.06(4)(b) and (c). Without a plan, neither the Department nor the local government can determine what the developer has the right to do, nor can either determine later whether the vested plan is being carried out.
The Department points out that the County had no zoning ordinance at the time it gave its initial “conceptual” approval as contended by appellant. Section 286.011, Florida Statutes (1973) provided that all County Commission meetings shall be public meetings, and further, that “no resolution, rule, regulation or formal action shall .be considered binding except as taken or made at such meeting”. Section 286.011(1). The statute also required that the minutes of County Commission meetings “shall be promptly recorded” and open to public inspection. Section 286.011(2). The minutes of the board of County Commissioners has been held to be the best evidence of the official acts of the board. Kirkland v. State, 86 Fla. 64, 97 So. 502 (1923); Pooser v. Jackson County, 160 Fla. 71, 33 So.2d 602 (Fla.1948). Although administrative bodies are not generally bound by the strict or technical rules of evidence governing jury trials or other court proceedings (Administrative Procedure Act, Section 120.58(1)(a), Florida Statutes; 1 Florida Jur.2d, Administrative Law, § 80), the Department here correctly determined that appellant’s evidence was insufficient to show “authorization”, because it failed to show what was “conceptually approved” by the Board of County Commissioners.
Although we find no basis upon which to disturb the Department’s ruling denying vested rights status as to Units Five and *380 Six, and we conclude that the Department correctly determined that these units are subject to the requirements of Section 380.-06, we are concerned about other aspects of the order. Appellant naturally desires to avoid the expense and inconvenience of complying with Section 380.06. However, the Department has proceeded under the only authorization available to it under the statute, and has determined that appellant must comply. The Department properly points out, as this court has held, that a developer who bypasses Section 380.06 “does so at its peril”, and that its construction may be enjoined under Section 380.11. General Development Corp. v. Division of State Planning, supra. Nevertheless, considering all the circumstances presented by the record before us, we must determine whether the action of the Department in calling a halt to any further development, and terminating sales in Units Five and Six until completion of the Section 380.06 review, is unreasonable or unwarranted.
A development of proportions such as this one could hardly go unnoticed in Jackson County. At least one State agency, the Florida Division of Land Sales and Condominiums, was specifically advised of the development, beginning in 1972, by virtue of appellant’s compliance with the registration requirements of Chapter 478, Florida Statutes. Notwithstanding this, it was not until July, 1977, that the development apparently came to the attention of the Department. After an exchange of letters, appellant proceeded to apply for a determination of its vested status under Section 380.06(12). Appellant filed an official application in May, 1978, and thereafter continued to supplement the application with other pertinent facts and documents. It its initial application appellant advised the Department that the improvements were “substantially completed”, and indicated that the development would be fully completed by the middle of June, 1978. Appellant represents to the court in this proceeding that the development is “100% completed”. This case therefore presents somewhat of a dilemma in that the review process of Section 380.06, with which appellant has been ordered to comply is directed entirely toward the ultimate issuance of a development order, which presumably will spell out what development shall be permitted. Here, the development not only has been completed, but appellant further advises that it has sold 1,305 lots of a total of 1,892 in Unit Five, and that it has sold 913 of a total of 1,651 lots in Unit Six. In addition, we cannot overlook the fact that appellant acted under at least “colorable” authority during the lengthy period of purchase, planning and developing the property-
The stated purpose of Chapter 380 is to protect the natural resources and environment of the State, preserve water resources, and facilitate orderly and well planned development. Section 380.021, Florida Statutes. In Sarasota County v. Beker Phosphate Corporation, 322 So.2d 655 (Fla. 1st DCA 1975), this court held:
“The entire scheme of Chapter 380 carefully preserves the rights of local governments to the maximum extent possible in ‘zoning’ property within its boundaries; the rights of the regional area by requiring a regional impact study in appropriate cases; the rights of the state by authorizing its land planning agency or the regional planning agency to seek review of local governmental action; and the rights of the landowner, including a specific timetable compelling expeditious action in order to quickly resolve the question of governmental dictates as to the use of his land.” (id. at page 658) (emphasis supplied)
The role of the State land planning agency (Department of Consumer Affairs) is one of supervision and enforcement, adoption of rules of procedure for comprehensive development, uniform procedural review of developments of regional impact, and other rules necessary to carry out the act, as well as to adopt specific guidelines and standards to be recommended to the Administration Commission for determining whether particular developments shall be “presumed” to be of regional impact. Section 380.032; 380.06(5)(c); 380.06(2)(a); 380.- *381 06(7)(d); 380.06(13)(c), and 380.06{14)(a). The agency also may appeal any development order by local government to the Florida Land and Water Adjudicatory Commission (Section 380.07), and is authorized to bring an action for injunctive relief against any person or developer who violates the act, or any rules, regulations or orders issued under it. Section 380.11. No penalties for violations are imposed under Chapter 380, in contrast with other related statutes, for example under Chapter 373 “Florida Water Resources Act of 1972”. Section 373.336, Florida Statutes.
Upon a review of the foregoing statutory provisions concerning the purpose of the Act, the role of the Department, and statutory provisions for enforcement, as applied to the factual circumstances present here, we have difficulty in reconciling the rights of the appellant with the rather drastic results which would follow from application of the Department’s order requiring a termination of sales pending review. Our difficulty is compounded because, although we agree with the Department’s position that appellant has not acquired vested rights status under the statute based upon the theory of estoppel[2], the same factual circumstances could, and very likely would, be considered as strong arguments for application of equitable estoppel in event of court action against appellant by local government or the agency seeking to enjoin the maintenance of improvements already constructed, or to enjoin further sales of lots pending Section 380.06 review. Tillman v. City of Pompano Beach, 100 So.2d 53 (Fla.1958); Lobean v. Trustees of Internal Improvement Fund, 118 So.2d 226 (Fla. 1st DCA 1960), cert. dis. 127 So.2d 98 (Fla. 1961); Metropolitan Dade County Water and Sewer Board v. City of North Miami, 213 So.2d 482 (Fla. 3rd DCA 1968); Town of Largo v. Imperial Homes Corporation, 309 So.2d 571 (Fla. 2nd DCA 1975); 12 Fla.Jur., Estoppel and Waiver, §§ 82, 83, 84.
There is no indication or suggestion by the Department that any facet of the development in question runs afoul of the purposes sought to be accomplished by Chapter 380. In its brief, the Department states:
It is conceivable, perhaps even likely, that the appellant will be able to develop Units Five and Six exactly as he presently intends after the DRI process is completed.
It appears to us to be an unwarranted and unreasonable exercise of the Department’s jurisdiction and discretion, under the circumstances presented here, to administratively enjoin sales by the developer. This can have no useful purpose other than to serve as a punitive measure.[3] The Department contends that its order does no injury to appellant because it does not down-zone the property, decrease the number of lots, or affect in any way the eventual use of the property. We disagree. The order terminates sales, thus depriving appellant of the only practical use it has for the property, and destroys the only means appellant has of recapturing the millions of dollars invested in the development.
A developer who fails to comply with Chapter 380 should not be rewarded. However, any measures taken by the Department as a consequence of such failure should bear some reasonable relation to the practicalities of the situation, and the purposes to be accomplished. By requiring appellant to comply with the review procedures of Section 380.06 the ends and purposes of the statute can be accomplished, because the course of future developments will be brought under control, and present *382 developments may be reviewed and examined to determine what, if any, changes are considered necessary and, at this stage of the development, are within the authority of local government or the reviewing agency to require. If in the judgment of the Department or of the local government any more drastic measures are deemed advisable during the period required for review and approval, these entities may avail themselves of their statutory authority under Section 380.11 to seek injunctive relief in the local circuit court. Furthermore we see no reason why the expense and effort required to bring this development into compliance with Chapter 380 cannot be minimized under the broad authority given to the Department to enter into agreements with any landowner, developer, or governmental agency as may be necessary to effectuate the provisions of the act. Section 380.032(3).
The provisions of the Department’s order requiring review and approval, and terminating any further developments until completion of the process are affirmed; and that portion of the order requiring termination of sales pending the review process is reversed.
McCORD and SHIVERS, JJ., concur.

. The Division of State Planning, within the Department of Administration, was the state land planning agency having these responsibilities under Chapter 380, until July 1, 1979, when pursuant to Section 49 of Chapter 79-190, Laws of Florida, these duties were assigned to The Department of Community Affairs.

. The Department points out that the statute imposes no affirmative duty upon the land planning agency to “seek out” developments in progress in the state; that absent such a duty it cannot be held to be negligent, or barred by laches, for failure to act. City of Winter Haven v. State, 125 Fla. 392, 170 So. 100 (1936). So far as the “vested rights” provision is concerned, it is clear that the agency has no duty to inform a developer one way or the other until a request for a binding letter is submitted under Section 380.06(4)(a).

. The order prohibiting further development without approval does not appear to be unreasonable.