384 So.2d 1369 (1980)
SUWANNEE RIVER AREA COUNCIL BOY SCOUTS OF AMERICA, Appellant,
v.
STATE of Florida, DEPARTMENT OF COMMUNITY AFFAIRS, and Florida General Equities, Inc., Appellees.
No. PP-101.
District Court of Appeal of Florida, First District.
July 3, 1980.
*1370 F.E. Steinmeyer, III, of Folsom & Steinmeyer, and Robert M. Rhodes, of Thompson, Wadsworth, Messer & Rhodes, Tallahassee, for appellant.
C. Laurence Keesey, and Carl A. Bertoch, Tallahassee, for appellees.
LARRY G. SMITH, Judge.
The Suwannee River Area Council Boy Scouts of America appeal from final agency action of the Department of Community Affairs denying the Council's petition for a formal administrative hearing pursuant to Section 120.57(1), Florida Statutes. The petition was filed the day the Department issued a binding letter to Florida General Equities, Inc., determining that the proposed development, Lake Talquin Estates, was not a development of regional impact (DRI). In denying the petition, the Department noted that the Council had neither sought nor obtained status as an intervenor in the binding letter proceeding and it concluded that the Council lacked standing as a party to request a formal administrative hearing. We agree that the Department properly issued a binding letter in this case and we affirm the Department's denial of a formal hearing to the Council.
The Council owns and operates the Wallwood Boy Scouts Reservation which lies adjacent to the developer's property. In *1371 1979, the developer submitted to the Gadsden County Planning and Zoning Commission, for conceptual approval, a proposed plan for developing its property into a residential community. The Council objected and urged the Commission to require that a determination be made as to whether or not the project was a DRI. In due course, the developer filed an application with the Department for a binding letter. The Council's attorney attended the preapplication meeting requested by the developer with the Department staff and he made several calls concerning the project to the Department during the consideration of the binding letter. On the last day of the 60-day period allowed by the statute (Section 380.06(4)(a), Florida Statutes), within which it must act on binding letter requests, the Department issued a binding letter determining that the Lake Talquin project was not a DRI. On the same day, a few hours before the binding letter was mailed, the Council filed a petition requesting a formal administrative hearing on the Developer's application. In its letter denying the Council's petition, the Department outlined the pertinent circumstances, and fully explained its application of the law and its reasons for the denial. We quote with approval from the Department's letter:
Binding letters are issued pursuant to Section 380.06(4)(a) F.S. The law requires this agency to issue binding letters in an expeditious manner (within 60 days) and does not specify any parties to the proceeding other than the developer and the state land planning agency. A binding letter application is submitted to the Department voluntarily by a developer if he "is in doubt whether his proposed development would be a development of regional impact." A binding letter is not a building permit or a permit to begin construction of a project. Even if a development is determined by this Department not to be a DRI, it is still subject to all local zoning ordinances, subdivision regulations and building permit requirements; in addition, any other applicable state and federal permitting requirements must be complied with. A binding letter merely determines whether the developer's plans must, in addition to other permitting requirements, be reviewed and approved by local government in accordance with the provisions of Section 380.06 F.S. The Legislature in enacting Section 380.06(4)(a), did not specify or intend that third persons, such as your client would be given standing as a formal party to participate in, and thereby delay, the determination by the Department as to whether a developer is subject to the additional review and approval procedures specified by Section 380.06, F.S.
* * * * * *
... the Department has considered the Section 120.52(10) definition of the term "party" and finds that there is no sufficient substantial interest alleged or shown by your client that will be affected or determined by a decision whether Lake Talquin Estates is or is not a development of regional impact. This conclusion is required when the preceding explanation of the nature and purpose of binding letters is considered in conjunction with the fact that your client's property is adjacent to the development and any effect or impact felt by them resulting from Lake Talquin Estates would be inherently local, not regional. Furthermore, any such impact would result from actual construction of the project, which is not permitted or authorized by a binding letter, rather than the mere determination whether such construction must first be authorized pursuant to Section 380.06 in addition to other applicable local, state or federal permitting procedures.
* * * * * *
The Department further denies your Petition for Hearing because formal 120.57(1) hearings must be requested by a party. No Petition to Intervene has been filed on behalf of your client that would have enabled the Department to consider whether any alleged interest of your client is sufficient to entitle it to party *1372 status. Rule 28-5.25(3)(a) Florida Administrative Code requires that intervention may be granted after a motion to intervene is filed stating the substantial interests of the intervenor and showing that such interests are subject to determination by the agency.
The Petition for Hearing received on July 9, 1979 does not reveal the existence of any material issue of disputed fact. * * The Petition for Hearing contains only vague unsupported, undocumented allegations concerning primarily local impacts. There is no reference to studies, reports or the existence of factual information that tends to challenge or contradict the information and facts referred to in the July 9, 1979 binding letter.
The Lake Talquin Estates binding letter was required to be issued on July 9, 1979, pursuant to Section 380.06(4)(a) F.S. July 9, 1979 was the 60th day after receipt. Your Petition was received on the morning of July 9, and is not considered timely for the following reasons.
The Division of State Planning (the state land planning agency prior to July 1, 1979) received the application for a binding letter from Mr. J.J. Garcia, representing the developer, on May 10, 1979. Notice of the application was published in the May 18, 1979 issue of the Florida Administrative Weekly. However, on April 25, 1979, F.E. Steinmeyer III, Esq. [the Council's attorney] attended a preapplication meeting at the Division that included Mr. J.J. Garcia, Richard Gentry, Don Johnson and Diana Sawaya-Crane of the Division staff, to discuss the Lake Talquin Estates development.
Mr. Steinmeyer was advised by phone on April 26, 1979 by Ms. Sawaya-Crane that the Division would accept and consider factual information concerning the development. In May, 1979 Ms. Sawaya-Crane advised Mr. Steinmeyer that an application for a binding letter on Lake Talquin Estates had been received and she explained the binding letter process. Mr. Steinmeyer was invited to look at the Division files on the project and was advised that any comments or information should be submitted by June 15, 1979. On June 13 or 14, Mr. Steinmeyer's secretary came to the Division to obtain copies of information submitted by the developer. No information was ever provided by Mr. Steinmeyer and although he was fully aware of the application for a binding letter and the time restraints related thereto, he did not take any action until the Petition was delivered on the morning on which the binding letter was due.
Under these circumstances, the Department finds and concludes that the binding letter was properly issued on July 9, 1979, within 60 days of receipt as required by F.S. § 380.06(4)(a) and that the Petition For Hearing was not timely filed.
The Department concludes that your client has not sought or obtained status as an intervenor in the subject proceeding, and does not have standing as a party to require a formal hearing pursuant to Section 120.57(1). For the reasons stated in this letter, the Department denies the Petition For Hearing.
As the Department aptly pointed out, the Council was granted a point of entry in the binding letter proceeding. This was done pursuant to the Department's Rule 22F-1.16(3), Florida Administrative Code, which permits the agency to solicit and accept submissions from any third persons who may possess factual information relevant to the Department's investigation of an application. We agree that this procedure of allowing and soliciting input by the Council in this binding letter proceeding adequately protected the Council's interest.
In its order, the Department went one step further in stating that in enacting Section 380.06(4)(a), "the Legislature did not specify or intend that third persons," such as the Council, "would be given standing as a formal party to participate in, and *1373 thereby delay," the determination by the Department of whether a developer is subject to the additional DRI review specified by Section 380.06, Florida Statutes. The Department maintained that the only interests determined or affected by the binding letter are the interests of the developer. Accordingly, it is the Department's position that only the developer may request a Section 120.57(1) hearing. In support of this proposition, the Department cites its own Rule 22F-1.16, Florida Administrative Code. Subsection (12) of that Rule provides that if an applicant (the developer) believes the binding letter determination involves a disputed issue of material fact, which requires a fully evidentiary hearing, the applicant may request a 120.57(1) hearing.
Without deciding whether the Department may by its own order or rules permit third party participation, we agree with the Department's ruling here that third persons have no enforceable right of their own volition to participate as formal parties in binding letter proceedings.[1] This court expressed this view of the statutory language in Compass Lake Hills Development Corporation v. State, 379 So.2d 376 (Fla. 1st DCA 1979), albeit as dicta, when we stated that in binding letter determinations, "only the Department and the developer are involved," citing South Florida Regional Planning Council v. Florida Division of State Planning, 370 So.2d 447 (Fla. 1st DCA 1979), and South Florida Regional Planning Council v. Florida Land and Water Adjudicatory Commission, 372 So.2d 159 (Fla. 3rd DCA 1979). These latter two cases dealt with the standing of governmental agencies, rather than private parties, both cases denying standing to the Regional Planning Council to contest the Department's determination that the proposed developments were not of regional impact. Also, denial of standing to a county was involved in Sarasota County v. General Development Corp., 325 So.2d 45 (Fla. 2nd DCA 1976), when the County sought to appeal to the Land and Water Adjudicatory Commission, pursuant to Section 380.07, Florida Statutes, a development order issued by a city within the county's boundaries. It can be seen that the decided cases, thus far, deal with the standing issue only as it relates to interests asserted by other governmental agencies, rather than private persons. The only case we have found involving the standing of a private person to question the DRI status of a proposed development is Pinellas County v. Lake Padgett Pines, 333 So.2d 472 (Fla. 2nd DCA 1976). That case, however, was concerned with the standing of a private party to maintain an action to enjoin a project until its developers complied with Chapter 380, and the court did not address the precise issue, that is, whether a third party was entitled to formal entry into the binding letter process. Furthermore, the Lake Padgett court also ruled that Chapter 380 was not actually involved in the controversy.[2] *1374 See also Sarasota County v. Department of Administration, 350 So.2d 802 (Fla. 2nd DCA 1977).
We consider it of fundamental significance that a binding letter proceeding is a process for determining whether another layer of government must be dealt with by a developer. Designation of a project as a development of regional impact operates to impose yet another restraint upon the use and development of property, in addition to those already imposed by state and local regulatory measures. We recognize it is not the purpose of Chapter 380 to provide a forum for parties whose complaints focus on alleged detriment to activities they wish to conduct on adjoining land. "Regional impact" is concerned with matters affecting the public in general, not special interests of adjoining landowners. We point out that such special interests are properly asserted before the local governing body having jurisdiction to control land use and development under zoning and building regulations.[3] Furthermore, the time restriction mandated by the statute (60 days) does not readily lend itself to formal entry of third persons into the binding letter proceeding. It is also entirely foreseeable that, as a practical matter, entry of third persons would so delay and complicate the procedure as to be in the end self-defeating, since developers would be more reluctant to voluntarily subject themselves to the additional delay and expense entailed in securing a binding letter.
Appellant's reliance upon Gadsden State Bank v. Lewis, 348 So.2d 343 (Fla. 1st DCA 1977), in support of its argument for "standing" giving the right to a formal Section 120.57(1) hearing, is misplaced. In Gadsden, this court held that Gadsden State Bank was entitled to a formal hearing, not because of its potential injury by a proposed competing bank, but because Gadsden Bank was a protestant expressly entitled to party status under the agency's own rules. In addition, the proceeding in Gadsden was required by law as the final step in the licensing or permitting process. See also Florida Department of Offender Rehabilitation v. Jerry, 353 So.2d 1230 (Fla. 1st DCA 1978).
Finally, we find that the binding letter in this case complies with the requirements of Chapter 380. Initially, it should be pointed out that Lake Talquin Estates, which proposes only 436 units, is not a presumptive development of regional impact under Rule 22F-2.10, Florida Administrative Code, which Rule provides a threshold of 500 residential units, before a development is presumed to be a DRI. Even so, the Department made a careful and detailed examination of the character, magnitude and location of the development. Each of the impacts was assessed by the Department and addressed separately in the binding letter. After gathering information from the appropriate agencies, the Department, carrying out its statutory duty under Chapter 380, determined that the development was not of regional impact.
The orders appealed from are AFFIRMED.
ROBERT P. SMITH, Jr., J., concurs.
WENTWORTH, J., specially concurs with opinion.
WENTWORTH, Judge, specially concurring.
I agree with the conclusion to affirm the order appealed. Pursuant to Rule 22F-1.16(3), Florida Administrative Code, the Department solicited the Council's participation *1375 in the binding letter proceedings, but the Council did not respond or in any way avail itself of this available "point of entry." The Council likewise failed to avail itself of Rule 28-5.25(3)(a), Florida Administrative Code, authorizing intervention upon motion. Under these circumstances I conclude that the Council has not shown an abuse of discretion in the Department's denial of the Council's request for a § 120.57(1) hearing as untimely and improper under the circumstances.
NOTES
[1] We further note that, even if an agency should grant a full party status to third persons, this does not necessarily entail a formal Section 120.57(1) hearing. See United States Service Industries  Florida v. Florida Department of Health and Rehabilitative Services, 383 So.2d 728 (Fla. 1st DCA 1980): "Not every dispute between an agency and an affected person requires formal proceedings for its resolution. Many disputes, ... can as readily be determined and made ready for judicial review under Section 120.57(2), which in proper application will afford full relief faster and more conveniently."
[2] The Lake Padgett court ruled that Lake Padgett Pines, a partnership, had standing to maintain an action to enjoin a water supply project on nearby land, based upon the failure of the developers of the water project to comply with Chapter 380. The complaint alleged that the well field would jeopardize the water supply from Lake Padgett Pines' own wells, lower the level of lakes on its property, and result in other damages peculiar to its lands. Even though the court found standing to litigate the issue of compliance with Chapter 380, based upon allegations of damage "materially different in kind from those affecting the public generally" (Lake Padgett Pines, supra, at 475), the court found that Chapter 380 was not applicable to the project, since Chapter 373, Florida Statutes (1972), the "Florida Water Resources Act," controlled the regulatory aspects of the well field project.
[3] Emphasis on local control and the limited scope of Chapter 380 is expressed in the legislative intent, found in Section 380.021, that "state land and water management policies should, to the maximum possible extent, be implemented by local governments through existing processes for the guidance of growth and development; and that all the existing rights of private property be preserved in accord with the constitutions of this state and of the United States."